STATE of Wyoming, ex rel. WYOMING
WORKERS' COMPENSATION DIVI-
SION, Appellant (Objector–Defendant),

v.

James L. BROWN, Appellee
(Employee–Claimant).

No. 89–134.

Supreme Court of Wyoming.

Jan. 30, 1991.

Joseph B. Meyer, Atty. Gen., Ron Arnold, Sr. Asst. Atty. Gen., and Larry M. Donovan, Asst. Atty. Gen., for appellant.

Valerie Hafner Phifer, Lander, for appellee.

Before CARDINE, C.J.,* and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

URBIGKIT, Chief Justice.

The Wyoming Worker's Compensation Division appeals from a district court order restoring legal fees and costs billed by the attorney appointed to represent an injured worker. Counsel petitioned for review by the district court following an administrative hearing examiner's reduction of her compensation by more than thirty-three percent and disallowance of about half of her costs. The immediate issue is whether a district court can hear an appeal from an order by an administrative hearing examiner and modify the order when the district court judge finds the amount awarded is unreasonable and is established by an improper legal standard within the worker's compensation statutes, W.S. 27–14–101 through 27–14–805, and the state constitution.

The issues in this case involve the right of an injured worker to counsel when pitted against the private attorneys who represent the employer in conjunction with state employed attorneys in the Attorney General's office who represent the Wyoming Workers' Compensation Division. Also presented is the right of any attorney who represents the injured worker to be compensated fairly. Justification for the attorney fee reduction and cost denial came from the application of adopted rules supplemented by applied practice.

We affirm the district court.

## I. ISSUES ARGUED

Appellant, Wyoming Workers' Compensation Division (Division), asks whether the district court:

I. * * * lack[ed] statutory authority and jurisdiction to enter an order awarding attorney fees for representation of appellee before the Office of Administrative Hearings.

II. * * * err[ed] as a matter of law in holding a hearing and taking additional evidence regarding attorney fees for representation of appellee before the Office of Administrative Hearings.

III. * * * err[ed] as a matter of law by substituting its judgment on the amount of attorney's fees and costs [ ] reasonably incurred in the representation of appellee before the Office of Administrative Hearings.

IV. * * * err[ed] as a matter of law by failing to follow W.S. 16–3–114(c) when entering its findings and order.

Appellee, James L. Brown (Brown), asks whether the district court:

1. * * * lack[ed] authority and jurisdiction to change the order of the Office of Administrative Hearings regarding the award of attorney fees and costs for representation of appellee?

2. * * * err[ed] as a matter of law in holding a hearing and taking additional evidence regarding attorney fees for representation of appellee before the Office of Administrative Hearings?

3. * * * after holding a hearing and taking additional evidence, err[ed] as a matter of law by entering an order directing the Workers' Compensation Division to pay the amount of attorney fees and costs reasonably incurred in the representation of appellee before the Office of Administrative Hearings?

4. * * * err[ed] as a matter of law when omitting from its decision specific reference to one of the alternate legal conclusions set forth in section 16–3–114(c) of Wyoming's Administrative Procedure Act?

We address these issues within the substantive context presented of the injured worker's right to competent counsel and the counsel's right to reasonably adequate compensation for legal services.

---

* Chief Justice at time of oral argument.

## II. WHAT HAPPENED

Valerie Hafner Phifer (Phifer) was appointed in the summer of 1988 to represent an employee injured during the winter of 1986. The case was sufficiently difficult and complex to cause a prior attorney to withdraw prematurely. Four months later, Phifer obtained an award of approximately $46,000 for her client. The injury claim, resulting from a motor vehicle accident, was settled with a stipulated sixty-five percent per annual total disability resulting from the initial head injury and succeeding vertigo and/or mental problems. Following settlement success, Phifer submitted a motion and billing for attorney fees of $1,533.50 and costs of $248.96 to the Office of Administrative Hearings. The administrative hearing officer's order reduced her attorney fees to $1,000 and her costs to $167.07. The letter from the hearing examiner to Phifer explained the reduction in fees by stating that "Section 4, Rules of the Office of Administrative Hearings, Practices and Procedures in Contested Cases" requires legal fees over $1,000 to be *approved in advance* and that attorney's costs for office copy machine charges and express mail costs are routinely denied.[1]

Phifer filed a motion for reconsideration. Neither a response to the motion for reconsideration nor a factual hearing was provided within the limited time available to request judicial review. Consequently, Phifer appealed to the district court where the reviewing court heard testimony from Phifer and another attorney, who routinely handles worker's compensation cases, each claiming reduction error and unreasonableness of the allowance *in this case for the*

1. The decision letter stated:

   I have issued an Order for Payment of Attorney's Fees in the above captioned matter, a copy of which is attached, a[n]d it is in that regard I am writing to you.

   Based on Section 4, Rules of the Office of Administrative Hearings, Practices and Procedures in Contested Cases, I have allowed you the maximum allowable limit for your fee, $1,000.00. The Rules state that unless a greater sum has been approved in advance by the Judge upon motion of the attorney, either written or verbal, the $1,000.00 is all that can be allowed. For your further information, $500.00 is the maximum allowable limit for costs unless a greater sum is applied for, and approved, in advance. In each case, good cause has to be shown why the attorney shall be allowed to exceed the maximum allowable limit.

   With respect to the costs allowed, I have deducted office copy machine charges and the express mail costs as our office is denying the application for reimbursement of these costs statewide. If you have some specific reason why these should be reimbursed, please notify us in your initial application for costs.

   Section 4 of the Rules of the Office of Administrative Hearings, Practices and Procedures in Contested Cases states:

   *Appointed Attorney.* The presiding judge [hearing officer] may, upon a showing that the circumstances of the case require it, appoint an attorney to represent an employee or claimant. The fee allowed by the presiding judge shall be based on a charge not to exceed $50.00 per hour for work performed by the attorney and shall not exceed a total of $1,000.00. Upon a showing that the $1,000.00 limitation is unreasonable, based on the circumstances of the case, the presiding judge may allow a larger fee. All requests for attorney fees shall be in detail showing time spent and work performed. Appointed attorneys shall be reimbursed for actual expenses including deposition costs, expert witness fees and all other costs incurred in preparation of and presentation of a case on behalf of the employee up to $500.00 unless a greater sum has been approved in advance by the judge. Except for good cause shown, attorneys' travel time does not constitute a reimbursable expense.

   Statements for fees and expenses of appointed attorneys shall indicate the source (that is, the employer's account, the employer or employee) from which the fees and expenses have been proposed to be ordered paid and copies of the statements shall be mailed by the attorney to the employer, the Division, and the employee.

   The time billing was at $50 per hour which, according to the documentation in the record furnished, "reflects a thirty-three percent (33%) reduction from the standard hourly rate in Wyoming." The successes of counsel in a very tough case with a very difficult client was recognized by the evidence in the district court in ruling "[t]hat Fifty Dollars ($50.00) per hour, the basis used to compute the attorney's fees is a rate which not only qualifies as a reasonable fee but, as a matter of fact, is a very low fee in consideration of the average hourly rate charged by attorneys in this area."

   In addition to the denied costs and reduced fee, the decision of the hearing officer raises a question not implicated directly in the billing since Phifer accepted the $50 per hour rate and only objected to the fee cap of $1,000.

*services furnished.* Evidence presented to the district court included statements that the current amount of fees generally allowed in worker's compensation cases are unreasonably low, so low in fact that a problem with broad implications is beginning to emerge in the shrinking pool of attorneys who can afford to represent injured wage earners.[2] The district court order stated, however, that the court did not rely on that hearing testimony in making the decision as a conclusion of law rejecting reduction when there was no factual basis to determine that the fees billed by Phifer were not reasonable and necessary.

## III. STANDARD OF REVIEW

■ Judicial review of an agency action is directed by W.S. 16–3–114, under which 16–3–114(a) allows any person aggrieved or adversely affected in fact by the actions or inactions of an agency to obtain judicial review by the district court. "This court is governed by the same rules of review as was the district court." *Atchison v. Career Service Council of State of Wyoming,* 664 P.2d 18, 20 (Wyo.), *cert. denied* 464 U.S. 982, 104 S.Ct. 424, 78 L.Ed.2d 359 (1983). *See also Banda v. State ex rel. Wyoming Workers' Compensation Div.,* 789 P.2d 124 (Wyo.1990). While this court typically remands an administrative decision back to the agency when that decision relies upon findings of fact, *Cook v. Zon-*

ing Bd. of Adjustment for the City of Laramie, 776 P.2d 181 (Wyo.1989); FMC v. Lane, 773 P.2d 163 (Wyo.1989), remand is not mandatory when the question before the district court or this court is a question of law or a mixed question of fact and law. *Natrona County School Dist. No. 1 v. McKnight,* 764 P.2d 1039, 1049 (Wyo.1988). The rationale underlying remand when findings of fact by an agency are involved is our reliance on the expertise of an agency. "[W]e have indicated we defer to the *experience* and *expertise* of the agency in its weighing of the evidence and will disturb its decisions only where it is clearly contrary to the overwhelming weight of the evidence on record." *Southwest Wyoming Rehabilitation Center v. Employment Sec. Com'n of Wyoming,* 781 P.2d 918, 921 (Wyo.1989) (emphasis added) (*accord Cody Gas Co. v. Public Service Com'n of Wyoming,* 748 P.2d 1144, 1146 (Wyo.1988)).

In the case of a question of law, it is the courts and not the agencies which display the dominant expertise since courts, as a matter of course, deal with questions of law and legislative intent. If an agency determination is not in accordance with law, this court corrects the determination to assure accordance with law. *See Employment Sec. Com'n of Wyoming v. Western Gas Processors, Ltd.,* 786 P.2d 866 (Wyo.1990). Unreasonableness of a

---

**2.** Despite the explosive increase in a number of practicing lawyers, the status of representation within the categories where the hourly rates for fees is significantly lower has not changed since 1965 when Professor Cheatham in *Availability of Legal Services: The Responsibility of the Individual Lawyer and of the Organized Bar,* 12 U.C.L.A.L.Rev. 438, 438 (1965), wrote:

A wide gap separates the need for legal services and its satisfaction, as numerous studies reveal. Looked at from the side of the layman, one reason for the gap is poverty and the consequent inability to pay legal fees. Another set of reasons is ignorance and fear on the part of those who could pay. There is ignorance of the need for and the value of legal services, and ignorance of where to find a dependable lawyer.

One thing has changed in this state. The *1989 Survey on Member Attitudes,* XIII Wyoming Lawyer 1, 2 (February 1990) reported:

Only 53 percent of the state's attorneys practice outside of Casper and Cheyenne. Two years ago, *the figure was 62 percent,* indicating there has possibly been a notable shift of attorneys from smaller towns into the larger communities.

(Emphasis added.) This means a nine percent shift in the number of attorneys moving to the two communities with the largest population in just two years. Those two communities contain only about thirty percent of the state's total population. Income expectation undoubtedly contributes to this current migration.

By this decision, a majority of this court declines to consider the validity on the $50 per hour fee rate established by rule since the direct decision can be confined by affirming the district court without testing the validity of adopted fee limitation rules which arbitrarily limit the amount that can or will be paid for attorneys representing worker's compensation claimants.

compensatory legal fee assessment is addressed by the court as a matter of law .if the underlying facts are not in dispute. The scope of review of the standard that is used for calculating the attorney fee is plenary with the appellate court. *Bell v. United Princeton Properties, Inc.*, 884 F.2d 713 (3rd Cir.1989).

This court in *Hohnholt v. Basin Elec. Power Co-op*, 784 P.2d 233 (Wyo.1989) addressed the specific standard for review in worker's compensation cases within the new organizational structure provided by the hearing examiner provision of W.S. 27–14–602. The *Hohnholt* test is substantial evidence for support of the findings and conclusions when evidentiary issues exist.

> "We examine the entire record to determine if there is substantial evidence to support an- agency's findings. If the agency's decision is supported by substantial evidence, we cannot properly substitute our judgment for that of the agency, and must uphold the findings on appeal. Substantial evidence is relevant evidence which a reasonable mind might accept in support of the conclusions of the agency. It is more than a scintilla of evidence." (citation omitted) *Trout v. Wyoming Oil & Gas Conservation Comm'n*, 721 P.2d 1047, 1050 (Wyo. 1986).

*Id.* at 234. The standard is similarly applied in the federal courts for the administrative agency appeal as one of substantial evidence for factual review. *Mangus v. Director, Office of Workers' Compensation Programs, U.S. Dept. of Labor*, 882 F.2d 1527 (10th Cir.1989). A plenary review of questions of law and substantial evidence for questions of fact are the general standard of review for worker's compensation attorney fee contest actions. *Matter of Death of Smithour*, 778 P.2d 302 (Colo.App.1989); *Weyerhaeuser Co. v. Fillmore*, 98 Or.App. 567, 779 P.2d 1102 (1989).

■ The standard to be applied for assessment of the reasonableness of attorney fees is a question of law; reasonableness within the legal standard may be discretionary or constitute a factual determina-

tion. *Weyerhaeuser*, 779 P.2d 1102. An insufficient record to support the decision made may justify the dismissal of the appeal, *Johnson v. Statewide Collections, Inc.*, 778 P.2d 93 (Wyo.1989), or may merit remand for further hearing by the administrative agency. In this case, the hearing examiner provided no factual or legal basis to justify the fee reduction.

## IV. HEARING EXAMINER—SECTION 4 ITS HISTORY AND APPLICATION

Chapter I of the Rules of the Office of Administrative Hearings Practices and Procedures in Contested Cases identifies its enabling legislation as W.S. 16–3–102(a)(i) and 16–3–103(b) (Wyoming Administrative Procedure Act), and 27–14–602(a) (contested cases under Wyoming Workers' Compensation Division). W.S. 16–3–102(a)(i) permits an agency to "[a]dopt rules of practice setting forth the nature and requirements of all formal and informal procedures available in connection with contested cases; * * *." W.S. 16–3–103(b) allows for the adoption of emergency rules for a period no longer than 120 days when the emergency rule is signed by the Governor and filed with the Secretary of State. W.S. 27–14–602(a) creates the office of independent hearing examiners and gives examiners the power to "conduct contested cases" in accord with the remaining portions of W.S. 27–14–602. W.S. 27–14–602(b) and (d) are relevant to this case. W.S. 27–14–602(b) allows an employer or health care provider to argue any objections under a contested case in accord with W.S. 16–3–107 (contested cases): W.S. 27–14–602(d) provides that "the hearing examiner may appoint an attorney * * *."

Citing justification within its enabling legislation, the agency adopted Chapter I, Section 4 of the Rules of the Office of Administrative Hearings Practices and Procedures in Contested Cases providing for the appointment of counsel and payment of fees.[3] Under the fee control provisions of Section 4, legal costs in excess of $500 are to be approved in advance, but approval is

---

3. *See* n. 1, *supra.*

not necessary for attorney fees which exceed $1,000. The reason strangely given by the hearing officer for limiting Phifer's fees to $1,000 was she had no prior approval for fees in excess of $1,000 which came from an apparently undisclosed policy which "supplemented" the published rule. Conversely, actual billed costs did not exceed $500. Phifer sought review in the district court in order to have that reviewing court compel the agency to abide by its own fee rule. W.S. 16–3–114(c)(i).

■ Phifer contended the decision of the hearing examiner reducing her fees and costs was arbitrary and capricious because the action was specifically unjustified by the agency rules as written which did not contain the pre-approval provision for fees in excess of $1,000. Underlying our often repeated statement that " '[i]n determining whether the action of an agency is arbitrary, capricious, or an abuse of discretion, the court ascertains whether the decision is supported by the record,' " *Cook,* 776 P.2d at 185 (*accord First Nat. Bank of Thermopolis v. Bonham,* 559 P.2d 42 (Wyo. 1977) and quoting *Holding's Little America v. Board of County Com'rs of Laramie County,* 670 P.2d 699, 703–04 (Wyo. 1983)), is the assumption that an agency will abide by the rules it promulgates. The failure of an agency to abide by its rules is per se arbitrary and capricious. "An agency action is arbitrary or capricious if it is not based on a consideration of the relevant factors." *Tri–State Generation and Transmission Ass'n, Inc. v. Environmental Quality Council,* 590 P.2d 1324, 1330–31 (Wyo.1979). Obviously, rules promulgated by an agency are relevant factors.

■ The decision of the district court can be sustained as a matter of law because the action by the hearing examiner, which was reversed, was contrary to law. In this case, we have a rule, an adaptation of the rule and a social interest cogently presented in the same decision. The conflict is apparent, since the reduction decision did not comport with the agency rule and the apparent office policy was ineffective to justify a non-compensatory fee decision. Reasonable compensation for the attorney is required. *In re Petition of Attorney Fees and Partial Reimbursement for Attorney Fees Pursuant to M.S. 176.081,* 350 N.W.2d 373 (Minn.1984); *State v. Green,* 470 S.W.2d 571 (Mo.1971).

■ In deciding this appeal, we do not understand the argument of the Division that the district court lacked jurisdiction and statutory authority to *consider on appellate review* the denial of billed legal fees as requested by the counsel appointed to represent the injured employee. The scope of review for an award of attorney fees is clearly available as a frequently considered subject within the number of fee dispute cases in public law activities. By statute, the initial decision maker in this case was the hearing examiner. To be tested on appeal was whether his decision was factually supported or erroneous as a matter of law. In review, the district court in result found no factual basis presented by the hearing examiner to sustain the decision rendered. Lacking evidence that the billed amount was either unreasonable or unnecessary makes reduction inappropriate, it is recognized that the Division posits its case on an agency right to define a "reasonable" fee by either an hourly schedule or a capped amount. We concur with the decision of the district court that this effort fails to provide a justification as a matter of law for denial to the attorney of reasonable compensation for services rendered within the amount billed which did not exceed the agency rule.[4] The decision

---

4. An interesting anomaly is created by the amended terms of the no additional fee statute, W.S. 27–14–608. The statute excluding a health care provider was an amendment to the initial 1986 enactment. That original provision stated:

(a) If the hearing examiner under W.S. 27–14–602(d) or the district court or supreme court under W.S. 27–14–615 set a fee for any person for representing a claimant under this

act, the person shall not receive any additional fee from the claimant.
W.S. 27–14–608 (1987). Subsequently, the change made was to add the phrase, "excluding a health care provider." W.S. 27–14–608 (1990 Cum.Supp.). The reference to the bill title of Wyo.Sess.Laws. ch. 264 (1989), does not provide any information about a change to the law which would constitute an exclusion of respon-

for fee reduction should assess whether excessive hours were billed, whether an improper hourly rate was charged and whether unnecessary costs were incurred. On this record, the hourly rate was below

the custom and standard, the case was difficult, the work necessary and the result extremely favorable. No question about counsel's incurrence of the cost is documented.[5]

sibility within whatever was intended by the phrase. The apparent purpose of the change is to permit a health care provider to charge without supervision by the hearing examiner so that only legal fees and not medical fees are controlled. Serious questions of equal protection are consequently created which need not now be pursued. The file does reflect health care consultation costs *in this case* for trial preparation of $250 for a doctor to meet for one hour with the attorney (who got less than $50 for that same hour) totalling $2,288, all of which was paid without question by the fund.

The second anomaly is that the limitation is triggered only if the hearing examiner or the court "sets the fee." If the concept argued by the Division is that the attorney accepts the scheduled fee as a matter of negotiation in undertaking the assignment, then, as a matter of negotiation, the attorney could properly reach an agreement with the department that counsel will not undertake to represent unless the department agrees in advance that it will not "set a fee." This would apparently mean that the attorney and the injured worker could negotiate for the conventional contingent fee, provided that the department agrees that it will not "set a fee" as a condition of getting the legal services provided as we would find to be a constitutional requirement.

5. Compensatory levels provided by federal litigation cannot be totally ignored if the solvency and sufficiency of the Wyoming bar should be maintained for practice in the local towns and small counties. *See Jardien v. Winston Network, Inc.,* 888 F.2d 1151, 1152 (7th Cir.1989) (Age Discrimination in Employment Act, 29 U.S.C.A. §§ 261–634, stipulated damages of $39,673, billed fees of $76,252.22 at $100 to $160 per hour to be recomputed on remand for possible duplication in excessive time); *In re Olson,* 884 F.2d 1415, 1422, 1430 (D.C.Cir.1989) (Ethics in Government Act proceedings where the charged individual was exonerated and the independent counsel billed $1,259,072.69 and the appellate court authorized $861,589.28 for the legal services provided in the three year period); *Bell,* 884 F.2d at 716 (ERISA employee retirement income security act proceedings, 29 U.S.C.A. §§ 1001–1461, billing $74,804.51 at $150 per hour and $125 per hour for lawyers and $25 for law clerks following a $33,721 pension plan recovery plus $8,139.50 as general damages), *Save Our Cumberland Mountains, Inc. v. Hodel,* 857 F.2d 1516 (D.C.Cir.1988) (Surface Mining Control and Reclamation Act of 1977, 30 U.S.C.A. § 1270(d), original trial court award of $147,670.96 for the public service law firm at an hourly rate of $150 an hour); and *Duran v. Carruthers,* 885 F.2d 1492, 1493 (10th Cir.1989)

(prison condition proceeding, fees billed and allowed of $77,611.38 plus $325,091,97). *See also Reazin v. Blue Cross and Blue Shield of Kansas, Inc.,* 899 F.2d 951, 956 (10th Cir.), cert. denied —— U.S. ——, 110 S.Ct. 3241, 111 L.Ed.2d 752 (1990) (anti-trust, $200 per hour rate for a total of $2,176,983.75 in attorney fees plus "significant" costs).

A state worker's compensation recovery of $335,198.28 in a Texas case justified a twenty-five percent attorney fees award of $83,799.57. *Texas Employers Ins. Corp. v. Keenom,* 716 S.W.2d 59, 60 (Tex.App.1986). As perhaps more comparable cases, *Ganson v. State, Dept. of Admin., Office of State Employees' Ins.,* 554 So.2d 522, 531 (Fla.App.1989) (a contingency risk factor was applied and fees of $48,250 awarded) and *Wattenbarger v. Boise Cascade Corp.,* 301 Or. 12, 717 P.2d 1175, 1176–77 (1986) (the fee was set at $80 per hour for fifteen hours with obligation to reconsider whether a contingency increase as a risk factor should be added). Compare, however, what happens if the lawyers organize, *Family Div. Trial Lawyers of Superior Court-D.C., Inc. v. Moultrie,* 725 F.2d 695 (D.C. Cir.1984) (required pro bono civil representation if accepting criminal representation appointments), but then see *Superior Court Trial Lawyers Ass'n v. F.T.C.,* 856 F.2d 226 (D.C.Cir. 1988), *cert. granted* 490 U.S. 1019, 109 S.Ct. 1741, 104 L.Ed.2d 179 (1989), *reversed in part* —— U.S. ——, 110 S.Ct. 768, 107 L.Ed.2d 851 (1990) (lawyer's concerted action violated a section of the Federal Trade Commission Act and is not permitted by the First Amendment to the United States Constitution.)

It first must be recognized that any argument premised on the guaranteed receipt of compensation for services rendered may also be misplaced when the 1989 statutory amendments added the provision, "No fee shall be awarded in any case in which the hearing examiner determines the claim to be frivolous and without legal and factual justification." W.S. 27–14–602(d). Although this may be a very, very difficult decision for an administrative hearing examiner to make as a definitive decision constituting a conclusion of law, the obvious purport of the provision was to change from a guaranteed right of compensation for representation of the injured worker to a status so that even if appointed, the compensation is dependent upon the contingent factor of ability to later establish a "good case." The result of this contingency function is to eliminate the usual justification for a reduced fee based on the certainty of payment. Consequently, we have statutory language which more nearly justifies the contingent fee arrangement of 33⅓ percent or forty

The Division misses the point in present appeal; the issue confined here is not the existence of authority to control amounts to be paid for attorney fees and incurred litigation costs. We only consider whether the agency action in amount reduction without development of factual basis was arbitrary and capricious. This court's appellate resolution constitutes a decision on the law and not a factual analysis when the hearing examiner fails to provide any reasonableness of amount analysis by using an arbitrary rule as supplemented by unwritten adaptation of advance approval.[6]

The decision of the district court is affirmed.

URBIGKIT, C.J., filed a specially concurring opinion.

THOMAS, J., filed a specially concurring opinion, with whom CARDINE, J., joined.

URBIGKIT, Chief Justice, specially concurring.

## A. INTRODUCTION

Although I recognize and accept a decision of the majority of this court that resolution of this appeal can be concluded on the simplistic criteria of an agency following its own rules, I further believe that the constitutional and statutory questions presented both justify and require consideration. The broad based subjects here properly in dispute will not permanently leave with the present, almost summary conclusion.

*Those subjects are adequacy of representation and reasonable compensation for appointed attorneys presented here by an administrative rule to limit both.* I address the constitutional and statutory problems intrinsic to this appeal where a $50 per hour cap for appointed counsel legal fees is calculated and where the statutory system also controls bargaining rights of the injured worker in his search for competent representation.

Consequently, I specially concur to address the underlying issues of validity of the rule arbitrarily limiting legal fees to an obviously unreasonably low maximum amount.

Constitutional issues are overtly presented since the Wyoming Workers' Compensation Division in appeal challenges only judicial review of the administrative agency award of legal fees which were not reasonably compensatory and incurred costs that were not reimbursed.[1]

---

percent as a normalized standard where payment is contingent upon winning the lawsuit. For consideration of the contingent fee approach, see *Hicks v. Wilson,* 391 S.E.2d 350 (W.Va.1990) (twenty percent of benefits received for 208 weeks).

**6.** It is well established in the practice of law that an arbitrary cap maximum dollar applied in advance of performance as a fee control technique when initially tested by reasonableness is frequently unworkable. Only after the case is over is it possible to critique the time spent as "unreasonable," but until completion of trial or finalization of settlement, no one, including specifically the attorney, can know for sure what may be required in time, effort and supporting services to provide competent legal assistance to the client. Sometimes what is needed to do a good job may not be justified by the results achieved. This case reflects extraordinary success within a difficult environment for which a realistic minimum fee was requested. If the practicing lawyer cannot accurately anticipate what efforts will be required and obstacles encountered, the uninformed hearing examiner would be totally at sea without sail or rudder in attempting to make the trip. Unreasonableness has to be tested in a very uncertain world with the acuity of hindsight empirically applied. Normally, in performed legal services, unreasonableness may involve doubled up use of personnel or inaccurately maintained time records. The best control is the practicing lawyer's recognition that hindsight will be applied to his efforts by the authority which has the discretion and fact finding responsibility. *See In re Olson,* 884 F.2d 1415 and *Manzanares v. Lerner's, Inc.,* 102 N.M. 391, 696 P.2d 479 (1985). An inflexible cap normally either produces inadequate legal services or unreasonably low compensation or, perhaps, both "slave labor and ineffective assistance."

**1.** This court cannot allow its inherent powers under the Wyoming Constitution to be curtailed in a manner that will affect its ability to assure competent counsel to represent indigent clients, in this case injured claimants under the Wyoming Worker's Compensation system. *White v. Board of County Com'rs of Pinellas County,* 537 So.2d 1376 (Fla.1989).

The initial decision is whether any appellate review should be pursued beyond the affirming decision that no factual basis for denial of the requested fee was provided and, consequently, the action of the hearing examiner, as an administrative agency, was arbitrary and capricious even under his own rule as a matter of law. The problem with this limitation for decision is that the basic justification for decision, even if it was not followed, was the adopted Section 4, where, within its application in the fixed uniform amount of $50 per hour, awarded fees are less than reasonably compensable for most lawyers in Wyoming today and, in some cases, are less than customary office overhead for the practicing lawyer. *See* 1989 Survey on Member Attitudes, XIII Wyoming Lawyer 7 (February 1990), reflecting that only 3.9 percent of the state's lawyers charge $50 per hour or less and 18.3 percent charge under $71 per hour. *See likewise State v. Boyken*, 196 Mont. 122, 637 P.2d 1193 (1981) and *State v. McKenney*, 20 Wash. App. 797, 582 P.2d 573 (1978). The issue is whether an unreasonable rule by amount limitation can serve to justify a non-compensable legal fee decision.

Since the rule adopted and applied is central to decision, the question of its validity in use by the agency in my opinion should be considered.[2] An initiation in basics is foundational to assess the rights of the injured employee to secure legal representation and the obligation to provide compensation for the services consequently rendered.[3] In adopting the worker's compensation amendment in 1914, two objectives were identified. First, the employer was to be provided an immunity from litigation, which interest is obviously significant considering the prevalence of amendments to the statute and present status of litigative objection. *See Pool v. Dravo Coal Co.*, 788 P.2d 1146 (Wyo.1990) and *Brebaugh v. Hales*, 788 P.2d 1128 (Wyo. 1990). The second objective was to secure a prompt, cheap and summary tribunal to settle disputes and secure benefits. *See* Governor Joseph M. Carey's address to the Twelfth Wyoming State Legislature, 6 House Journal at 40 (1913). *See also* n. 4, *infra*.

While the first objective was secured, the second still eludes success. One of the reasons voiced to justify the 1986 recodification was that the benefit payments were excessive and the system was being misused by extraordinary and perhaps unnecessary medical procedures. In the process, the agency was further transformed from a stakeholder status into that of an advocate in resisting payment by becoming an adversary against many injured workers. Since the state and the employer come heavily armed with expensive legal assistance, due process cannot be achieved without a similar opportunity afforded to the injured worker. Other states either provide legal fees to appointed counsel, comparable to private legal fees, or a much higher contingent fee arrangement. Inevitably, the indispensable criteria of a constitution-

2. One of the more cumbersome aspects of legal fee sufficiency consideration in statutory and constitutional review is the complexity of cases distributed between civil and criminal cases. Scrutiny is injected with the further question whether a difference regarding reasonable compensation and obligation to provide adequate legal assistance to the indigent is dependent upon the nature of the appointing authority, e.g., judicial or administrative. Furthermore, we are faced with the quandary as to what happens if competent and complete legal attention cannot be secured to protect the rights of the injured worker under the purview of Wyo. Const., art. 10, § 4. Ineffective assistance of counsel may not necessarily be confined in malpractice or due process/Sixth Amendment concepts to criminal cases. If the employee cannot get due process and justice in worker's compensation, would the alternative of direct suit against the employer be restored?

3. It is another curiosity of the present status of the Wyoming statute that the hearing examiner is given the right to control the compensation for attorneys whose responsibility it is to represent the interests of the injured, while the statutory amendment of 1989 eliminated a control over compensation provided by the witnesses who are the source of the hearing information and testimony. This subject was the apparent source of the hearing comment when the district court commented: "And I do think that the attorneys are taking a bad rap from the legislature. It's not the attorney fees that are causing the problem in the worker's comp system, it's the medical fees, if anything."

al system demonstrable by the voluminous case law, is competent representation by adequately compensated counsel. As frequently recognized in a multitude of failed pro se representation cases, with almost minimal exceptions, "a man who represents himself, has a fool for a client." Furthermore, the injured worker is even less well presented if he is forced to rely on the advocacy dispensation of opposition counsel, albeit employer or the state fund, or to expect that the hearing examiner simultaneously will provide representation and fair and disinterested adjudication. *James L. Brown would never have recovered his award in this case had it not been for the enthusiasm, ingenuity and persistence of the excellent counsel by whom he was assisted.*

The state fund's argument raises both a statutory and a constitutional concern when approval of a reasonable fee is requested. Our analysis should necessarily address both the sufficiency of the services provided to the injured worker if there is a right to legal assistance and the correlative right of the practicing bar to be reasonably paid for services rendered in worker's compensation cases equally with other participants, including specifically, health care professionals. *Cline v. Warrenberg*, 109 Colo. 497, 126 P.2d 1030 (1942).

It could not have been the legislative intent to place the amount to be allowed as attorney's fees on such a low and unreasonable level as would foreclose a claimant from obtaining the legal services of competent counsel. It is difficult to conceive that regulatory powers of an administrative board, without express legislative sanction, are to be so exercised as to prevent the obtaining by a claimant of the assistance of competent counsel. To arbitrarily deny a claimant the right of competent legal representation, by fixing unreasonably low remuneration for services rendered by attorneys, is a serious matter, and may amount to a denial of due process. * * *

From experience gained in reviewing judgments in such cases, we know that controversies arising under the Workmen's Compensation Act sometimes are highly technical, and where such is the case a claimant requires the assistance of counsel possessed of skill and learning. The insurer in such cases usually is represented by very able and expert counsel, and in the administration of justice a measure of equality in ability of counsel representing the litigants is a great aid in arriving at a just solution of the issues involved.

*Id.* at 1031.

## B. HISTORICAL EVOLUTION OF ATTORNEY FEE COMPENSATION CASES IN WYOMING

Wyoming's worker's compensation was authorized by a 1914 constitutional amendment which added three sentences to Wyo. Const. art. 10, § 4:

No law shall be enacted limiting the amount of damages to be recovered for causing the injury or death of any person. Any contract or agreement with any employee waiving any right to recover damages for causing the death or injury of any employee shall be void. *As to all extrahazardous employments the legislature shall provide by law for the accumulation and maintenance of a fund or funds out of which shall be paid compensation as may be fixed by law according to proper classifications to each person injured in such employment or to the dependent families of such as die as the result of such injuries, except in case of injuries due solely to the culpable negligence of the injured employee. Such fund or funds shall be accumulated, paid into the state treasury and maintained in such manner as may be provided by law. The right of each employee to compensation from the fund shall be in lieu of and shall take the place of any and all rights of action against any employer contributing as required by law to the fund in favor of any person or persons by reason of the injuries or death.*

(Emphasis added.) Creation of the compensation program also implicitly amended the provisions of Wyo. Const. art. 19, § 7, which had outlawed "yellow-dog" labor

contracts and similar discriminatory arrangements:

> It shall be unlawful for any person, company or corporation, to require of its servants or employes as a condition of their employment, or otherwise, any contract or agreement whereby such person, company or corporation shall be released or discharged from liability or responsibility, on account of personal injuries received by such servants or employes, while in the service of such person, company or corporation, by reason of the negligence of such person, company or corporation, or the agents or employes thereof, and such contracts shall be absolutely null and void.[4]

**4.** The relationship between Wyo. Const. art. 19, § 7 and the amendment provided in Wyo. Const. art. 10, § 4 when related to the "bargain" provided for constitutional loss of rights by the employee and benefit to the employer has not been significantly addressed in Wyoming legal history and opinions. The enactment clause for submission of the constitutional amendment to the vote of the electorate by Wyo.Sess.Laws ch. 79 (1913) simply provided:

> AN ACT to submit to the qualified voters of the State of Wyoming an amendment to the Constitution of the State of Wyoming adding to Section 4 of Article 10 of the Constitution a provision authorizing and requiring Workmen's Compensation Acts.

Governor Joseph M. Carey, one of the general statesmen of Wyoming history was the father of worker's compensation in Wyoming. In his message to the legislature discussing the proposed amendment which was then unanimously adopted by *both* houses of the legislature, Governor Carey said:

> The examination of damage suits by employees against employers shows that they are very costly to the employers and very unsatisfactory to the employees. Several of the American states, following the example of the United States, are considering the passage of a Workmen's Compensation Act.
>
> Germany and England have given the matter great consideration. Such states as Massachusetts and Wisconsin already have splendid laws on their statute books and have obtained satisfactory results. Under the old system only twenty-nine per cent of the damages given for injuries to the employee reached the employee or his beneficiary. The delays have been too great and the processes of the court too slow, resulting in great injury both to the employer and the employee.
>
> As a rule the person injured needs immediate relief. If the injury results in his death, his wife, or those dependent upon him, need

In initiation of the Wyoming Workmen's Compensation program, the 1915 law provided for free legal services from the county attorney and severely restricted private representation.

> The Court or Judge shall direct the County and Prosecuting Attorney, or other competent attorney appointed by the Court to conduct the examination of witnesses on behalf of the injured workman, and it shall be the duty of said attorney to appear and perform such service without expense to either party.

Wyo.Sess.Laws ch. 124, § 12 (1915). The further provision was made to limit fees:

> It shall be unlawful for any person or any number of persons acting together

the compensation that is usually awarded in the way of judgment.

> The legislative committee of the Wisconsin Legislature, through its chairman, says there are four important reasons for a Workmen's Compensation Act:
>
> First, to furnish certain prompt and reasonable compensation to the injured employee;
>
> Second, to utilize for injured employees a large portion of the great amount of money wasted under the present system;
>
> Third, to provide a tribunal where disputes between employer and employee in regard to compensation may be settled promptly, cheaply and summarily;
>
> Fourth, to provide a means for minimizing the number of accidents in industrial pursuits.
>
> Some of the states are also adopting a system of insurance which will protect the employee and the employer.
>
> The constitutional convention of this state in making the Constitution went a long way in the right direction, when it provided: "It shall be unlawful for any person, company or corporation to require of its servants or employees as a condition for their employment, or otherwise, any contract or agreement whereby such person, company or corporation shall be released or discharged from liability or responsibility on account of personal injuries received by such servants or employees, while in the service of such person, company or corporation or the agents or employees thereof, and such contract shall be absolutely null and void."
>
> I recommend, therefore, that you give a law to this state based on justice between employer and employee, following the example of such states as Wisconsin and Massachusetts in adopting such a measure.

Governor Joseph M. Carey's address to the Twelfth Wyoming State Legislature, *supra*, at 40.

or separately or in any way, including attorneys, agents, interpreters, and all other persons, to receive or agree to receive either directly or indirectly from any beneficiary or beneficiaries under this act, for services rendered or to be rendered, either jointly or separately, in relating to procuring any benefit or benefits under this act, any sum or sums aggregating more than fifty dollars or more than five per centum of the whole amount received or to be received by such beneficiary or beneficiaries on account of injuries to any employee. Every person violating or concerned in the violation of the provisions of this section shall be guilty of a misdemeanor, and upon conviction thereof shall be fined not less than fifty dollars nor more than five hundred dollars, to which may be added imprisonment in the county jail for a term not exceeding ninety days.

Wyo.Sess.Laws ch. 124, § 25 (1915).

Modest change with regard to attorney's fees and legal services occurred in Wyo. Sess.Laws ch. 149, § 1 at 253 (1975) to provide:

#### 27–367. Attorney fees.

(a) No person or attorney shall agree to receive either directly or indirectly from any beneficiary under this act more than ten percent (10%) of the whole amount received or to be received by a beneficiary on account of injuries to any employee, or three hundred dollars ($300.00), whichever is less, for services rendered or to be rendered, either jointly or separately, in relation to procuring any benefit under this act. An additional attorney's fee not in excess of five hundred dollars ($500.00) may be allowed by the court for services in the supreme court. In cases of unusual complexity of law or fact the court may allow, by specific order, a reasonable fee commensurate with the legal services provided.

(b) Every person violating this section is guilty of a misdemeanor and upon conviction shall be fined not more than five hundred dollars ($500.00), to which

may be added imprisonment in the county jail for a term not to exceed ninety (90) days.

#### 27–368. Duties of county attorney.

The county attorney of the county in which the injury occurs shall give all necessary legal advice to any injured employee or his dependents who may seek advice in making and filing claims for compensation, and shall prepare all statement of claims or other papers necessary or advisable to be filed by the employee or dependents, free of all charges and costs.

Even by including the contingency fee provision, the legal fees were too low to attract private counsel in most cases and serious dissatisfaction existed about the enforced obligation and the sufficiency of services provided by the county attorney. Consequently, the law was revamped in 1986, eliminating participation of the county attorney and providing private attorney representation by creation of the Office of Independent Hearing Officers.

The hearing examiner may appoint an attorney to represent the employee or claimants and may allow him a reasonable fee for his services at the conclusion of the proceeding. The attorney shall be paid according to the order of the hearing examiner either from the worker's compensation account, from amounts awarded to the employee or claimants or from the employer. If the employer or division prevails, the attorney's fees allowed shall not affect the employer's experience rating.

W.S. 27–14–602(d) (1987).

This change eliminated the previous reliance on clerks of court and provided for administration under the direction of the state treasurer with contested cases reviewed by the independent hearing examiner agency. Consequently, an administrative proceeding was substituted for a judicial process as the fact finding adjudicative function.[5] In 1989, the statutory provision was again amended to state:

5. The Wyoming Worker's Compensation system is a state monopoly funded by statutorily established premium payments by employers. This is different from states where private insurance

Upon request, the hearing examiner may appoint an attorney to represent the employee or claimants and may allow the appointed attorney a reasonable fee for his services at the conclusion of the proceeding. An appointed attorney shall be paid according to the order of the hearing examiner either from the worker's compensation account, from amounts awarded to the employee or claimants or from the employer. If the employer or division prevails, the attorney's fees allowed shall not affect the employer's experience rating. Fees allowed shall be at an hourly rate established by the hearing examiner and any application for attorney's fees shall be supported by a verified itemization of all services provided. No fee shall be awarded in any case in which the hearing examiner determines the claim to be frivolous and without legal or factual justification.

W.S. 27-14-602(d).

The provision for attorney fees was also changed in 1986:

(a) If the hearing examiner under W.S. 27-14-602(d) or the district court or supreme court under W.S. 27-14-615 set a fee for any person for representing a claimant under this act, the person shall not receive any additional fee from the claimant.

(b) Any person violating this section is guilty of a misdemeanor and upon conviction shall be fined not more than seven hundred fifty dollars ($750.00), imprisonment in the county jail for a term not to exceed six (6) months, or both.

W.S. 27-14-608 (1987). This section was also restated in 1989 by amendment obviously intended to delete the supervision of fees charged by the health care provider by stating:

(a) If the hearing examiner under W.S. 27-14-602(d) or the district court or supreme court under W.S. 27-14-615 set a fee for any person for representing a claimant under this act *excluding a health care provider*, the person shall not receive any additional fee from the claimant.

(b) Any person violating this section is guilty of a misdemeanor and upon conviction shall be fined nor more than seven hundred fifty dollars ($750.00), imprisonment in the county jail for a term not to exceed six (6) months, or both.

W.S. 27-14-608 (emphasis added).[6]

While the 1914 constitutional amendment eliminated actions by the employee against

companies write worker's compensation coverage exclusively or by alternative choice. States where both a state fund and private carriers exist afford a different structure of controversy administration.

Unreasonably low premium amounts for the extraordinarily hazardous occupations, such as lumbering and oil well drilling within the Wyoming change from a boom economy to a recession in industrial activities, has placed tremendous financial pressure on the underfunded Wyoming Worker's Compensation program. A comparison of the level of difference is the lumber industry where worker's compensation premiums in an adjoining state were recently about ten times higher than the amounts collected for the state fund in Wyoming.

6. A cruel but clear conclusion is provided about the effectiveness of lobbying activities. The health care practitioners were removed from supervision and the status of the practicing bar was further decimated. Constitutionality of a similar statute in *Mack v. City of Minneapolis*, 333 N.W.2d 744, 752 (Minn.1983) was, in part, justified by statutory requirement "that reasonable fees be set." Continued resistance by the Minnesota administrative agency required a sec-

ond appeal after which the Supreme Court set the fee twice the amount originally approved in finding that the decision of the agency provided fees that were inadequate, arbitrary and capricious in failing to apply proper principles for decision. *In re Petition of Attorney Fees and Partial Reimbursement for Attorney Fees Pursuant to M.S. 176.081*, 350 N.W.2d 373, 378 (Minn. 1984). The essential factor ignored was the amount of benefit involved. The approved amount totaled $55,000 or about seven percent of recovery.

A troubling anomaly is provided by the present provisions of the statutes. Provisions of W.S. 27-14-602, by its permissive "may" language, makes the appointment of legal representation permissive. Consequently, the hearing examiner in advance of the hearing is provided the power to determine whether the worker will be represented. If counsel is provided, then the effect of the last sentence of the same section is curious: "No fee shall be awarded in any case in which the hearing examiner determines the claim to be frivolous and without legal or factual justification." W.S. 27-14-602(d).

Does this mean that the appointed counsel is, in effect, on a contingent or result basis? *See*

the employer, it is a statute which limits the right of the employee to bargain freely for competent legal services and allows the hearing examiner to set fees and disallow accrued costs which creates the ingredients for this appeal. Tested are constitutional concerns regarding adequacy of representation and sufficiency of compensation for attorneys appointed to represent injured workers whose rights to benefits were established by the constitutional amendment which eliminated common law rights of direct suit. Wyo. Const. art. 10, § 4. The basic question is whether an injured worker can be denied the right to seek direct redress against the employer, be denied opportunity to negotiate freely to obtain adequate assistance of counsel and then finally to be faced with a level of compensation payable to his counsel which eliminates most practicing attorneys from providing this kind of legal service in Wyoming worker's compensation cases. The more fundamental issue is created by administrative results which can deny, whether intended or unintended, adequate or even any legal representation for job injured workers in Wyoming.[7]

The litigative structure for present agency proceedings provides opportunity for either the employer or the state fund itself to contest benefit claim and benefit payment. With additional agency staffing by assigned attorneys, a perceptible and predictable change has occurred with active litigative opposition being more frequently provided by the state fund where before it was the employer normally found in contested case opposition. Although a premium rating system for loss experience does exist, in many high risk industries the employer may never reach a level where premium rating benefit can occur. Consequently, the economic interest to deny the individual's accident claim may rest primarily with the state fund as a state agency and not with the employer. We are presented with a concern for the constitutional protection of the injured individual against the power and financing of the state and its attorneys.

## C. HEARING EXAMINER RULE—SECTION 4 ITS STATUTORY INVALIDITY

This court interprets statutes in pari materia; the provisions of W.S. 27–14–602(d) justify no exception to that interpretive rule. The hourly rate established by the hearing examiner for an attorney appointed to represent an injured worker should first be factually established to be

---

*Clark v. Sage*, 102 Idaho 261, 629 P.2d 657 (1981); *Wight v. Hughes Livestock, Co., Inc.*, 204 Mont. 98, 664 P.2d 303 (1983); and *Wattenbarger v. Boise Cascade Corp.*, 301 Or. 12, 717 P.2d 1175 (1986). If so, would the normal contingent fee standard of at least 33⅓ percent be required? The statute provides no standard for appointment and seems to contemplate that the hearing examiner prejudges the case in exercising discretion for appointment and then determines, after the appointment, whether there was merit in the case so that the appointee may or may not be compensated. We then have confusion with the relationship of those provisions with the terminology of W.S. 27–14–608. Can the attorney at least negotiate for a fee from the injured and usually indigent worker if the hearing examiner has made the assessment that the application was without legal or factual justification? We do not clearly understand what happens if counsel is not appointed "upon request" and whether or not, if counsel later appears and wins or loses, the attorney in the case can elect a contingency of one-third or fifty percent and then submit his bill for fees for payment by the state fund. Fortunately, those thoughtful issues are not now presented by the stature of this case and decision to affirm the district court to compensate the attorney for the minimal fee obviously merited and requested.

An even broader concept is previewed considering when the worker requests a desired attorney and the designated attorney refuses to accept the responsibility for representation unless a contingent fee, which he is willing to take, will be approved. Will it matter whether or not the hearing examiner accepts the request if the attorney, not having been appointed, undertakes the responsibility and wins and, as a consequence, may not be subject to a designated fee limitation?

7. In some of the numerous state fee cases involving representation for indigent clients where constitutional interests are recognized such as criminal prosecution, loss of parental rights and, here, benefits under the worker's compensation constitutional amendment, a disturbing nuance is discernible by suggestion that adequate representation may be undesirable when resulting either in better representation in criminal cases and some acquittals or greater protection for the indigent in civil controversies.

reasonable in the context of hourly fees charged by attorneys in Wyoming. Placing a $50 per hour cap on appointed attorneys who agree to represent injured hourly wage earners is an invalid exercise of the office of the hearing examiner because the cap is not based on substantial evidence justifying reasonableness. Actions performed "without [an] adequate determining principle" are arbitrary. *Corneil v. Swisher County,* 78 S.W.2d 1072, 1074 (Tex.Civ. App.1935). Otherwise, as later discussed, the statute becomes unconstitutional if the hourly rate does not fairly compensate the attorney. There is a further problem with the adaptation that the statute provides authority for a uniform maximum fee in all areas and all circumstances for all attorneys which will not necessarily have any relation to the character, sufficiency or validity of the legal services provided. *Frazier v. Conagra, Inc.,* 552 So.2d 536 (La.App. 1989).

Even without a cap, the schedule is unjustified because the office of independent hearing examiners is without statutory authority to promulgate a standard uniform fee schedule. While W.S. 27–14–602(d) states that "[f]ees allowed shall be at an hourly rate established by the hearing examiner and any application for attorney's fees shall be supported by a verified itemization of all services provided," there is no authority to establish a general fee schedule by rule adaptation. The legal action of an administrative agency cannot exceed its statutory authority. *Moore v. North Dakota Workmen's Compensation Bureau,* 374 N.W.2d 71 (N.D.1985). Although the statute gives a hearing examiner power to allow an hourly rate, there is no authority to establish any fee schedule or a fee which, although uniform, may not be reasonably compensable to the attorney. *Mack v. City of Minneapolis,* 333 N.W.2d 744 (Minn.1983); *Kahn v. State, University of Minnesota,* 327 N.W.2d 21 (Minn. 1982). To construe the agency to be endowed with such power would be to invite invalidation of the statute due to an improper delegation of power. While we have said previously that " 'administrative officials need not be supplied with "a spe-

cific formula for their guidance in a field where flexibility and policy adaptation to infinitely variable conditions constitute the essence of the program" ' ", *State ex rel. Stocker v. City of Laramie,* 737 P.2d 746, 750 (Wyo.1987) (*accord Spiegelberg v. Wyoming Highway Dept.,* 508 P.2d 18, 21 (Wyo.1973)), some formula or principle is needed. Before delegation is permitted, the judicial branch must be able to identify an " 'intelligible principle' to guide and confine administrative decisionmaking," *Bowsher v. Synar,* 478 U.S. 714, 720, 106 S.Ct. 3181, 3185, 92 L.Ed.2d 583 (1986) (quoting *Synar v. United States,* 626 F.Supp. 1374, 1389 (D.C.1986)), so the judiciary can determine that the agency is acting in accord with legislative intent.

Precisely because the scope of delegation is largely uncontrollable by the courts, we must be particularly rigorous in preserving the Constitution's structural restrictions that deter excessive delegation. The major one, it seems to me, is that the power to make law cannot be exercised by anyone other than Congress, except in conjunction with the lawful exercise of executive or judicial power.

*Mistretta v. United States,* 488 U.S. 361, 109 S.Ct. 647, 677–78, 102 L.Ed.2d 714, *aff'd sub nom. United States v. Willis,* 873 F.2d 1446 (8th Cir.), *cert. denied* 490 U.S. 1073, 109 S.Ct. 2083, 104 L.Ed.2d 646 (1989), Scalia, J., dissenting. *Cf.* Comment, *In Praise of Judicial Restraint: The Jurisprudence of Justice Antonin Scalia,* 1989 Det.C.L.Rev. 117 (1989). Those concerns are as appropriate for Wyoming as they are for the nation's central government.

The argument of poverty of the fund as a justification to infringe upon the constitutional rights of an injured employee and the appointed attorney is non-availing. We do note, however, that in the face of this claim to poverty, the legislature did not seek to place a ceiling on those legal costs incurred by private counsel for the employer or the publicly funded attorneys in the Attorney General's office arrayed to do legal battle with appointed attorneys fight-

ing for the benefits possibly due an injured worker. The legislature lacks the power to amend the basic constitutional stature of the state in denying due process to the weakest among us when yielding to conflicting economic and political interests of individual segments of the state's society.[8]

## D. CONSTITUTIONAL PERSPECTIVE WITHIN WYOMING LAW—WORKER'S RIGHT TO COUNSEL

"Prior to the 1914 amendment to Art. 10, § 4, Wyoming Constitution, it was constitutional law in Wyoming that 'No law shall be enacted' limiting the amount of damages to be recovered for causing the injury or death of any person." *Markle v. Williamson*, 518 P.2d 621, 622 (Wyo.1974). The workmen's compensation provisions of 1914 automatically allowed an employer civil immunity for causing employee injury and death and, in return, not so automatically provided some compensation to an injured worker and his family if killed, even without the necessity of proving the em-

ployer negligent. One dominant characteristic of the system as it has evolved is it is still frequently highly adversarial. Defenses in the absence of the negligent component remain available and periodically effective.

Under W.S. 27–14–601(a) and (b), if the Workers' Compensation Division disputes the compensability of an injury, the Attorney General's office argues their point in a contested case—a trial-type hearing—as provided by W.S. 16–3–107(a) through (r) and continue right of appeal to this court. Similarly, if an employer objects to the compensability of the injury or death resulting from injury, W.S. 27–14–602(b), a contest by representative counsel is available through W.S. 16–3–107(a) through (r). While an injured employee may or may not be indigent, most injured employees would be unable to afford an attorney to battle the Attorney General representing the Wyoming Workers' Compensation Division and also employer counsel at a time when they are unable to work and are faced with

8. In statutory provision, W.S. 27–14–201(a) (1989 Cum.Supp), it is provided:

The worker's compensation program shall be neither more nor less than self-supporting. Employments affected by this act shall be divided by the division into classes, whose rates may be readjusted annually as the division actuarially determines. Any employer may contest his classification as determined by the division following the contested case provisions of the Wyoming Administrative Procedure Act except that the division shall carry the burden of proving that the classification is correct. Information shall be kept of the amounts collected and expended in each class for actuarially determining rates, but for payment of compensation, the worker's compensation account shall be one and indivisible.

Thereafter, in W.S. 27–14–201(c), it is provided, as directly countervailing to both the self-supporting criteria and the responsibility for classes to be adjusted in equivalency to risk:

Upon compliance with the rate making provisions of the Wyoming Administrative Procedure Act, approval by the insurance department as provided by W.S. 26–14–119 and written approval by the governor, the division shall determine the hazards of the different classes of employments and fix the premiums therefor at the lowest rate consistent with maintenance of an actuarially sound worker's compensation account and the creation of actuarially sound surplus and reserves, and for such purpose shall adopt a system of schedule rating in such a manner as to take account of the peculiar hazard of each risk, mathematically and equally based on actual costs to the program in terms of number and extent of injuries and deaths, and shall use consultants or rating organizations as it determines necessary. The maximum total annual rate for any employer under this section shall not exceed five and one-half percent (5.5%) of the employer's payroll or payrolls including the penalty for claim experience. Any rate surcharge imposed under subsection (n) of this section is in addition to the maximum total annual rate limitation imposed under this section.

Reports of the division and information otherwise commonly available reveal that in the high risk industries, the cap of five and one-half percent is simply not compensable. *See* 1987 Survey of Occupational Injuries and Illnesses, Wyoming Department of Labor and Statistics (1989). That cap, where similar industries in adjoining states are higher and perhaps as much as ten times more, cannot be acclimated within the plan unless either benefits are reduced in some fashion or external funding is provided. This court cannot constitutionally contribute to the reduction of benefits by a determined process which denies equal protection and due process to the injured worker by assuring that adequate representation will not be available as an answer to fund insolvency by substituting benefit denial.

medical bills. Additionally, the employee is faced with the statutory limitation on the acquisition of counsel imposed by W.S. 27–14–608.

Due process, " 'unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances.' " *Cafeteria & Restaurant Workers Union, Local 473, AFL–CIO v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230, *reh'g denied* 368 U.S. 869, 82 S.Ct. 22, 7 L.Ed.2d 70 (1961) (quoting *Joint Anti–Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 162–63, 71 S.Ct. 624, 643, 95 L.Ed. 817 (1951)). Because it is " 'compounded of history, reason, [and] the past course of decisions * * *,' " *Cafeteria & Restaurant Workers Union, Local 473, AFL–CIO*, 367 U.S. at 895, 81 S.Ct. at 1748 (quoting *McGrath*, 341 U.S. at 162–63, 71 S.Ct. at 643), "the strictures which the [Due Process] Clause imposes must be tailored to fit each particular situation." *Smethurst v. State*, 756 P.2d 196, 202 (Wyo.1988), Urbigkit, Justice, dissenting. While the contours of due process are flexible, the demand that due process be accorded is not flexible. *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). The touchstone for due process is a process affording fundamental fairness.[9]

Under due process, the controlling question is fundamental fairness for an injured employee to participate without the benefit of counsel in an adversarial process where other litigants can come well-armed, whether with counsel funded by the employer or provided by the Attorney General's office or both. Under federal due process analysis, "counsel *may* well be needed to respond to opposing counsel or other forms of adversary in a trial-type proceeding, * * *." *Walters v. National Ass'n of Radiation Survivors*, 473 U.S. 305, 333, 105 S.Ct. 3180, 3195, 87 L.Ed.2d 220 (1985) (emphasis added). But, as this court demonstrated in *Lawrence–Allison and Associates West, Inc. v. Archer*, 767 P.2d 989, 994–97 (Wyo.1989), Wyoming's due process clause provides protection not accorded under the federal due process clause. *Lassiter v. Department of Social Services of Durham County, North Carolina*, 452 U.S. 18, 35, 101 S.Ct. 2153, 2163, 68 L.Ed.2d 640, *reh'g denied* 453 U.S. 927, 102 S.Ct. 889, 69 L.Ed.2d 1023 (1981).[10] Analysis of federal due process does not end the inquiry in Wyoming as to a potential violation of due process.

As a number of recent State Supreme Court decisions demonstrate, a state court is entirely free to read its own State's constitution more broadly than this Court reads the Federal Constitution, or to reject the mode of analysis used by this Court in favor of a different analysis of its corresponding constitutional guarantee.

*City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 293, 102 S.Ct. 1070, 1077, 71

---

**9.** *See Arizona v. Youngblood*, 488 U.S. 51, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988), *reh'g denied* 488 U.S. 1051, 109 S.Ct. 885, 102 L.Ed.2d 1007 (1989) and *Lisenba v. People of State of California*, 314 U.S. 219, 236, 62 S.Ct. 280, 290, 86 L.Ed. 166 (1941), *reh'g denied* 315 U.S. 826, 62 S.Ct. 620, 86 L.Ed. 1222 (1942), but see *Browning–Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc.* 492 U.S. 257, 109 S.Ct. 2909, 2921, 106 L.Ed.2d 219 (1989) and *State v. Youngblood*, 164 Ariz. 61, 790 P.2d 759 (App. 1989).

**10.** Right to attorney, *Pennsylvania v. Finley*, 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987); *Douglas v. People of State of California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 *reh'g denied* 373 U.S. 905, 83 S.Ct. 1288, 10 L.Ed.2d 200 (1963); *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Griffin v. People of the State of Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891, *reh'g denied* 351 U.S. 958, 76 S.Ct. 844, 100 L.Ed. 1480 (1956); *Powell v. State of Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). See also *Mallard v. United States Dist. Court for Southern Dist. of Iowa*, 490 U.S. 296, 109 S.Ct. 1814, 1821, 104 L.Ed.2d 318 (1989). *See Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *Morrissey*, 408 U.S. 471, 92 S.Ct. 2593; and *Mempa v. Rhay*, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967). See also *Walters*, 473 U.S. 305, 105 S.Ct. 3180. See, however, *Murray v. Giarratano*, 492 U.S. 1, 109 S.Ct. 2765, 2773, 106 L.Ed.2d 1 (1989), Stevens, J., dissenting, *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 109 S.Ct. 2646, 2667, 105 L.Ed.2d 528 (1989), Blackmon, J., dissenting; and *Wheat v. United States*, 486 U.S. 153, 108 S.Ct. 1692, 1704, 100 L.Ed.2d 140, *reh'g denied* 487 U.S. 1243, 108 S.Ct. 2918, 101 L.Ed.2d 949 (1988), Stevens, J., dissenting.

L.Ed.2d 152 (1982). The flexibility of due process makes it particularly inappropriate to equate federal and Wyoming due process each time the federal courts shift the contours of due process.[11] *See* Keiter, *An Essay on Wyoming Constitutional Interpretation*, XXI Land & Water L.Rev. 527, 549 (1986).[12]

To assess the status of James L. Brown, injured worker, and his right to the assistance of counsel to seek worker's compensation benefits, requires identification of the source of his right to legal assistance. The answer may not be uniformly derived from each different worker's compensation system utilized nationwide, but within the architecture of the systems individually chosen by the different states there are constitutional aspects of the right to counsel for the individual worker. *Powell v. State of Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); 75 Am.Jur.2d *Trial* § 52 (1974). *Cf. Zancanelli v. Coal and Coke Co.*, 25 Wyo. 511, 173 P. 981 (1918).

This court can go no further than the present Wyoming system of a state monopoly fund governmentally administered, except to identify that there is a constitutional right for the worker to be represented and the lawyer to be paid for that representation. Considering the history of the program where common rights of the worker were extinguished by granted immunity to the employer, *Zancanelli*, 173 P. 981, it becomes apparent that a right to counsel for Wyoming workers injured within the confined rights of Wyo. Const. art. 10, § 4 and the laws adopted pursuant thereto create a due process interest constitutionally guaranteed. Note, *The Right to Appointed Counsel for Indigent Civil Litigants: The Demands of Due Process*, 30 Wm. & Mary L.Rev. 627 (1989). That right is the right to adequate assistance by a competently performing attorney.[13] *Cline*, 126 P.2d 1030; *State in Interest of Antini*, 53 N.J. 488, 251 A.2d 291 (1969).

I contend that, because of the potential unfairness of such an unequal contest, the right to counsel in a worker's compensation adversarial contest is constitutionally required under Wyo. Const. art. 1, § 6. *See also Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). Following assessment of the constitutional interest, our analysis considers sources for the legal assistance, e.g., public official (county attorney duty), as evidenced in ear-

---

**11.** *Cf. State v. Laude,* 654 P.2d 1223, 1228 (Wyo. 1982).

**12.** The premiere scholarship about the attorney in his uncompensated responsibilities is provided by Shapiro, *The Enigma of the Lawyer's Duty to Serve,* 55 N.Y.U.L.Rev. 735 (1980). He recognized in conclusion:

> At least absent adequate compensation, a lawyer should be able to decline an appointment for financial reasons whether or not it would cause "unreasonable" hardship. And regardless of compensation, a lawyer should also be able to decline for reasons of conscience even if representation of the client would not be impaired.

*Id.* at 792.

There are a multitude of attorney fees cases. Historically, the oldest and most firmly fixed class of cases involving representation of the indigent is defense against criminal prosecution. These cases are based upon the Sixth Amendment of the United States Constitution and state constitutional right to counsel provisions. That original group was followed by another category in public law relating to constitutional interests affected by public action such as termination of parental rights and mental commitment. These representation cases are founded on a due process—Fourteenth Amendment—criteria and equivalent rights guaranteed in state constitutions. *In Interest of D.B.,* 385 So.2d 83 (Fla.1980); *McNabb v. Osmundson,* 315 N.W.2d 9 (Iowa 1982). The third class is statutorily based by providing fee transfer responsibility where access to courts has been politically determined to justify opportunity for the successful claimant to also collect attorney fees. These cases include civil rights, Equal Access to Justice (EAJA), and handicapped rights as examples and involve more than eighty present federal statutes and are not premised on constitutional justification. The differentiation factor in the third category in addition to source of authority from legislative discretion is the non-application of indigency as a criteria for attorney fee reimbursement to the litigant.

**13.** It is in the teaching of adequacy of counsel cases where the right is constitutionally guaranteed that the criminal cases provide authority since, if the rights exists, its character and provision does not differ between criminal prosecution, Sixth Amendment representation and civil proceeding, due process guarantees. *See, however, Fatally Flawed,* 13 National L.J. 1 (Nov. 1990) discussing capped fee cases for criminal defense.

lier history in Wyoming, an organization in the nature of public defender to represent the interest of the individual against the resistance of the state,[14] or if neither of those arrangements are provided, then the private practicing attorney. That choice has been legislatively made by selection of the private lawyers. Attorney compensation next requires attention.

## E. CONSTITUTIONAL RIGHT OF THE ATTORNEY TO REASONABLE COMPENSATION

Enunciated nearly 140 years ago in *Blythe v. State*, 4 Ind. 525 (1853) and then reannounced and comprehensively emphasized in *Webb v. Baird*, 6 Ind. 13 (1854) and quoted in *Knox County Council v. State ex rel. McCormick*, 217 Ind. 493, 29 N.E.2d 405, 408 (1940):

"The gratuitous defence of a pauper is placed upon two grounds, viz., as an honorary duty, even as far back as the civil law; and as a statutory requirement. Honorary duties are hardly susceptible of enforcement in a Court of law. Besides, in this state, the profession of the law was never much favored by special pecuniary emoluments, save, some years ago, in the case of docket-fees in certain contingencies. The reciprocal obligations of the profession to the body politic, are slender in proportion. * * * [A]ny class should be paid for their particular services in empty honors, is an obsolete idea, belonging to another age and to a state of society hostile to liberty and equal rights.

"The legal profession having been thus properly stripped of all its odious distinctions and peculiar emoluments, the public can no longer justly demand of that class of citizens any gratuitous services which would not be demandable of every other class. To the attorney, his profession is his means of livelihood. His legal knowl-

edge is his capital stock. His professional services are no more at the mercy of the public, as to remuneration, than are the goods of the merchant, or the crops of the farmer, or the wares of the mechanic. The law which requires gratuitous services from a particular class, in effect imposes a tax to that extent upon such class—clearly in violation of the fundamental law, which provides for a uniform and equal rate of assessment and taxation upon all the citizens.

"It must be matter of congratulation to the profession that they are thus relieved from the burden of gratuitous services and useless honors; and remitted to the more substantial rewards of other citizens."

The conception that the ancient so-called majority rule required the attorney to serve the cause of justice on behalf of an indigent as a professional honor, for which appointed counsel ought not request compensation, is now totally out of date. It is stated:

We are acutely aware, however, that, under prevailing concepts in the field of the administration of criminal justice, the ever increasing requirements for legal representation of indigents on appeal in the field of criminal law, in the postconviction area, in the juvenile delinquency arena, and in related civil commitment situations are rapidly imposing an extremely heavy and time consuming burden upon the legal profession. This being so, it follows that to require an attorney to process an appeal without any prospect of compensation will possibly not only tend to detract from the quality of his service to the indigent and to the court, but might ultimately lead to a scarcity of counsel willing and able to accept appointment.

*Honore v. Washington State Bd. of Prison Terms and Paroles*, 77 Wash.2d 660,

**14.** In *State ex rel. Fitas v. Milwaukee County*, 65 Wis.2d 130, 221 N.W.2d 902 (1974), the Wisconsin Supreme Court directly assigned all probation and parole revocation cases to the public defender since the representation was required and no funding source for private attorney compensation was available. *Cf. Johnson v. City Commission of City of Aberdeen*, 272 N.W.2d 97 (S.D.1978), where the court determined that if the city undertook prosecution, it must also assume the cost of representation of the criminally charged indigent; if no defense, then no prosecution.

466 P.2d 485, 496 (1970). The court held that for the purpose of habeas corpus, the attorney who is appointed and prosecutes the appeal is entitled to compensation for his services from public funds.

The Oklahoma court likewise determined in *Bias v. State*, 568 P.2d 1269 (Okl.1977) that an award of $250 was unconstitutional when a lawyer undertook a difficult assignment and spent 255 hours in the representation. Recognizing the so-called prior majority rule where statutes and practices had withstood attack on grounds that the indigent representation assignments constituted involuntary servitude, denied equal protection of the law, took property without due process of law and took property for public purposes without just compensation, the court determined that the denied compensation was outdated under the Oklahoma Constitution. The court was guided by *People ex rel. Conn v. Randolph*, 35 Ill.2d 24, 219 N.E.2d 337 (1966) that an extraordinary burden on the attorney could not be constitutionally imposed by the court. *See likewise Delisio v. Alaska Superior Court*, 740 P.2d 437 (Alaska 1987); *State v. Green*, 470 S.W.2d 571 (Mo.1971); *Lueck v. State*, 99 Nev. 717, 669 P.2d 719 (1983); *Clark County v. Smith*, 96 Nev. 854, 619 P.2d 1217 (1980); and *State v. Second Judicial Dist. Court In and For Washoe County*, 85 Nev. 241, 453 P.2d 421 (1969). *Cf. Clark v. Ivy*, 240 Kan. 195, 727 P.2d 493 (1986), which was superceded by *State ex rel. Stephan v. Smith*, 242 Kan. 336, 747 P.2d 816 (1987), where, after an exhaustive review, the Kansas Supreme Court determined that the operational system for appointment of counsel for indigents violated both the Kansas and United States Constitutions.

The practice of law in Wyoming is vested in the supervisory responsibility of the Wyoming Supreme Court. An examination of that relationship inevitably demonstrates a mutuality of responsibility and requires recognition that supervision also carries an equivalent responsibility for the court to promote the well being of the profession.

In recognition of that concept to sustain the well being of the legal profession and due process and fairness to its members, we should also recognize the discriminatory relationship which has developed between those attorneys who provide services under state law compared to those who have the munificences of a practice directed towards civil right violations and federally imposed attorney fee proceedings.[15] An obvious difference exists since, in many regards under the federal proceedings as is true in many jurisdictions under worker's compensation statutes, the client has to win for the attorney to gain fees. However, normally a contingent fee relationship is provided which accommodates itself most appropriately within the significantly higher fee awards paid. *Page v. Green*, 758 S.W.2d 173 (Mo.App.1988); *Gullett v. Stanley Structures*, 222 Mont. 365, 722 P.2d 619 (1986). *See Standard Guaranty Insurance Co. v. Quanstrom*, 555 So.2d 828 (Fla.1990). *Cf. Venegas v. Skaggs*, 867 F.2d 527 (9th Cir.1989), involving both statutory fees and contingent fees.

If an adequate level of representation is going to be provided to those persons who require court appointed attorneys for civil or criminal processes within the purview of the state court system, then the quality will be affected by the adequacy of compensation. Two directly related yet completely different constitutional interests are at issue. First is the right of the client to adequate representation and second is the attorney entitlement to make an adequate living if he is expected to perform competently and remain in the private practice of law.

The client's constitutional interest is founded in the Sixth and Fourteenth Amendments of the United States Constitution of right to counsel and due process. The attorney's constitutional interest is involved in a property interest and prohibition against taking under the Fifth Amendment. In addition to the distribution of powers provided by Wyo. Const. art. 2,

---

**15.** 28 U.S.C.A. § 2412(d)(2)(A)(ii) provides a cap for EAJA (Equal Access to Justice Act) recovery at $75 per hour with adjustment for inflation and extraordinary circumstances. *See Pierce v. Underwood*, 487 U.S. 552, 108 S.Ct. 2541, 2553, 101 L.Ed.2d 490 (1988).

Wyo. Const. art. 1, § 6, due process of law; Wyo. Const. art. 1, § 8, courts open to all; and Wyo. Const. art. 1, § 34, uniform operation of the law, address the constitutional interests of the client.

Phifer is entitled to seek constitutional recognition of her interest in Wyo. Const. art. 1, § 6, which states "[n]o person shall be deprived of his life, liberty or property without due process of law;" in Wyo. Const. art. 1, § 33, which indicates private property shall not be taken or damage for public or private use without just compensation; in Wyo. Const. art. 1, § 34, which states all laws of a general nature shall have uniform operation; and in Wyo. Const. art. 3, § 27, which says that special and local laws are prohibited "where a general law can be made applicable no special law shall be enacted."

The line of contrary persuasion is generally referenced to *United States v. Dillon,* 346 F.2d 633 (9th Cir.1965), *cert. denied* 382 U.S. 978, 86 S.Ct. 550, 15 L.Ed.2d 469 (1966) which established a moral, ethical as well as legal responsibility of the attorney to accept a pro bono appointment by judicial compulsion. Differences can be found between civil and criminal cases in some jurisdictions. *See Ruckenbrod v. Mullins,* 102 Utah 548, 133 P.2d 325, 331 (1943), which states:

> The attorney, because of his position as officer of the court, can be compelled by the court to render gratuitous services in the defense of indigents, and an attorney who has been so appointed is not entitled to compensation from the public in the absence of a specific statute to the contrary.

Compare *In Interest of D.B.,* 385 So.2d 83 (Fla.1980); *State ex rel. Scott v. Roper,* 688 S.W.2d 757 (Mo.1985), authenticating that no enforceable donative duty exists in civil proceedings; *Menin v. Menin,* 79 Misc.2d 285, 359 N.Y.S.2d 721 (1974); and *Bedford v. Salt Lake County,* 22 Utah 2d 12, 447 P.2d 193, 194–95 (1968).[16]

---

**16.** Among these cases, there is clearly a declining number of jurisdictions which follow the general duty thesis requiring the attorney to provide free legal services. The total is obviously a minority and in continuing decline in general acceptability. Cited examples for this concept and authority reference directly to *Dillon* include *Sparks v. Parker,* 368 So.2d 528 (Ala.), *appeal dismissed* 444 U.S. 803, 100 S.Ct. 22, 62 L.Ed.2d 16 (1979); *State v. Ruiz,* 269 Ark. 331, 602 S.W.2d 625 (1980); *Weiner v. Fulton County,* 113 Ga.App. 343, 148 S.E.2d 143, *cert. denied* 385 U.S. 958, 87 S.Ct. 393, 17 L.Ed.2d 304 (1966); and *State v. Goolsby,* 278 S.C. 52, 292 S.E.2d 180 (1982). *Weiner* provides a curious analysis in extended syllogism. It goes like this:

> The right to follow a profession, which of course includes the right to be compensated for services rendered, is a property right. * * * From this it follows that an attorney from whom services are demanded and by whom they are given has a property right in his fee for those services, which may be set by contract, or, if not, should be based on their just and reasonable value. * * * "Our courts have uniformly adopted the practice of assigning counsel to represent indigent criminals in all cases when they were unable to employ counsel to represent them." * * * There is thus a public necessity and a public purpose; there is a demand by the sovereign and compliance by the citizen, and there is in all practical effect a taking of the property of that citizen, or, better stated, of a limited class of citizens, forcing them "alone to bear public

burdens which, in all fairness and justice, should be borne by the public as a whole." *Weiner,* 148 S.E.2d at 144–46 (quoting *Delk v. State,* 99 Ga. 667, 26 S.E. 752 (1896) and *Armstrong v. United States,* 364 U.S. 40, 49, 80 S.Ct. 1563, 1569, 4 L.Ed.2d 1554 (1960)). The court then said in asserting the duty to serve without compensation:

> "This, too, is an old common law duty, and has been not only the admitted *obligation* but the pride and glory of the profession from time immemorial. The law recognizes the profession and the office. As it confers privileges, it also imposes duties. One of these is that he will never reject the cause of the defenseless, and that when the presiding Judge of a Court (at which he is in attendance)—the head of his profession for the time—presents to his notice a case coming within the sphere of his obligation, he will, in good faith as a man and as a lawyer, come to his aid. If he fail, he fails in his *professional* obligations." * * *
> * * * We also incline to believe that a lawyer, except in unusual circumstances, has no right and will make no effort to refuse a case which he is requested to take by a judge of the court before whom he regularly appears, and that such request is tantamount to a demand. While, therefore, the amount of compensation for the work he does may be shaded by the first of these considerations, compliance which not only deprives him of a considerable portion of his working time but leaves him financially in worse condition through en-

A rigorous analysis of a developing judicial philosophy for the recognition of responsibility to pay for legal services when appointments are made to represent the indigent is found in a current course of Florida cases. *Board of County Com'rs of Hillsborough County v. Scruggs*, 545 So.2d 910 (Fla.App.1989); *White v. Board of County Com'rs of Pinellas County*, 537 So.2d 1376 (Fla.1989); *The Florida Bar In re Roth*, 500 So.2d 117 (Fla.1986) (*see also The Florida Bar v. Roth*, 471 So.2d 29 (1985), *reh'g* 500 So.2d 117 (Fla.1986)); *Makemsom v. Martin County*, 491 So.2d 1109 (Fla.1986), *cert. denied* 479 U.S. 1043, 107 S.Ct. 908, 93 L.Ed.2d 857 (1987); *Metropolitan Dade County v. Bridges*, 402 So.2d 411 (Fla.1981); *In Interest of D.B.*, 385 So.2d 83. The course of cases establish not only the right to counsel and the right for reasonable compensation for counsel in criminal cases, but the extension of the Sixth Amendment criminal rights to the due process considerations of civil proceedings of a constitutional nature. *Scruggs*, 545 So.2d 910; *In Interest of D.B.*, 385 So.2d 83.

A similar recognition of the responsibility of the government and not the individual lawyer to provide legal services for the indigent was developed in the South Dakota cases. *Tappe v. Circuit Court, Sixth Judicial Circuit In and For Tripp County*, 326 N.W.2d 892 (S.D.1982); *Johnson v. City Commission of City of Aberdeen*, 272 N.W.2d 97 (S.D.1978). The subject was addressed by the Utah Supreme Court for civil law in an involuntary commitment context:

> By requesting the court to appoint counsel, an indigent defendant impliedly consents to pay a reasonable fee for the services rendered, and thus the lawyer is not entirely forced to render service without compensation therefor. How-

ever, it must be understood that the assumption of a defense of an impecunious defendant by a lawyer is a matter strictly between the court and the lawyer, and the legislature can no more require a lawyer to represent a client for free than it can compel a physician to treat a sick or injured indigent patient without pay. For the legislature to attempt to compel a lawyer to work by passing a statute requiring the judge to order it done would be to take his property without giving just compensation, or to impose a form of involuntary servitude upon him. The legal assistance which an attorney renders to a client is his stock in trade; and in order for the attorney to make a living, he must sell his service.

Until the legislature provides a method by which a lawyer can be paid for compulsory services to an indigent person, a statute requiring such services is unconstitutional as requiring one to give services (a form of property) without just compensation being paid therefor. It matters not that the service is to be rendered to one other than the state. It would still be an involuntary taking by the state.

*Bedford*, 447 P.2d at 194–95. *See also Green*, 470 S.W.2d 571.

The principal case of historical precedent rejecting the "involuntary servitude" of an attorney to represent the indigent without fee is *Blythe*, 4 Ind. 525. See likewise *Knox County Council*, 29 N.E.2d at 407–08, in stating:

> It follows therefore that where one who is without means is charged with crime, the question of whether he shall have counsel appointed for him has not been left to the discretion of the court or the Legislature. It has been determined by the people in their Constitutions, national

---

forced expenditures of personal funds may, under the second, amount to confiscation. To this extent, under prevailing conditions which result in ever increasing demands for uncompensated service, we are fully cognizant that an undue burden is placed on the legal profession as a matter of custom, and that this burden is itself borne unequally by members of the profession in practice; that the glory of

service dims in inverse proportion to the demands made upon the time of an individual attorney, and that the very able young attorney who has presented this issue so squarely and forthrightly speaks not for himself but in the name of justice for all members of his profession and ours.

*Id.* at 146–47 (emphasis in original and quoting *Elam v. Johnson*, 48 Ga. 348, 350 (1873)).

and state, that he shall have counsel, and that there can be no legal prosecution of the charge against him unless and until counsel is provided for him. The Constitution of this state vests the judicial power in the courts. The judiciary is an independent and equal coordinate branch of the government. Courts were established for the purpose of administering justice judicially, and it has been said that their powers are coequal with their duties. In other words, they have inherent power to do everything that is necessary to carry out the purpose of their creation. The Constitution contemplates indictment and trial in the courts for crime. It is the duty of the court to see that justice is administered speedily, without delay, and legally, and in conformity to the constitutional mandates. One of these constitutional mandates is that a defendant in a criminal case shall have counsel to represent him. It is the duty of the courts therefore to see to it that he shall have counsel. In many, if not most, jurisdictions it is regarded a part of the general duty of members of the bar to act as counsel for destitute persons charged with crime, and it is perhaps the majority rule that, when appointed by the court, attorneys must look alone to the possible future ability of the accused to pay their compensation when no provision therefor is made by statute. 7 Corpus Juris Secundum, Attorney and Client, § 172, p. 1033; 5 American Jurisprudence, § 157, p. 354. But, from the earliest times, this court has held that to require the services of an attorney to prosecute and defend without fee is in conflict with section 21 of article 1 of the Constitution of Indiana. Blythe v. State, 1853, 4 Ind. 525; Webb, Auditor, etc. v. Baird, 1854, 6 Ind. 13. In the latter case it was said that it will not be contended that the court had a right to demand the attorney's services in defending without reward, and that, if the statute is looked upon as authority for the appointment of counsel to defend poor persons without reward, the statute is in conflict with the superior constitutional provision.

The Supreme Court of Nebraska in *Kovarik v. Banner County*, 192 Neb. 816, 224 N.W.2d 761, 764 (1975), first quoted from *Luke v. Los Angeles County*, 269 Cal.App.2d 495, 74 Cal.Rptr. 771 (1969), said that "[i]f society is to demand representation by counsel in an expanding variety of proceedings and to insist on a high level of competency in the performance of such representation, then counsel should be paid." *Luke*, 74 Cal.Rptr. at 765 then determined:

> In this case we believe that plaintiff in defending the indigent conferred through the services a benefit upon the public, and that in accordance with the general rule that when one party renders service of benefit to another there is an implied obligation on the part of the recipient to pay the reasonable value of the services rendered. The cost involved is not a burden which should be made to rest unequally upon the individual, merely because he is an attorney.

See likewise for parole revocation, *State ex rel. Fitas v. Milwaukee County*, 65 Wis.2d 130, 221 N.W.2d 902 (1974), where the power of the judiciary to appoint and the obligation of the state to pay was defined. In Iowa, the issue was an indigent facing a jail sentence from a contempt of court proceeding for non-support. *McNabb v. Osmundson*, 315 N.W.2d 9 (Iowa 1982). The court found the protection that sheltered the defendant "to be found in the due process clause of the fourteenth amendment, although sixth amendment decisions of the Supreme Court [were considered]." *Id.* at 11. With appointment, the court found the concomitant obligation on the part of the public is to pay for the legal services. In the 1982 statistical analysis, the court further stated that "[s]ince 1850, Iowa has stood among the strong minority of states [16 out of 34 jurisdictions that have addressed the issue] holding lawyers compelled to represent indigents must receive reasonable compensation." *Id.* at 16 (citing Shapiro, *The Enigma of the Lawyer's Duty to Serve*, 55 N.Y.U.L.Rev. 735, 756–62 (1980) and further citing *Hall v. Washington County*, 2 Green 473, 474 (Iowa 1850), the lawyer's "right" to reason-

able compensation was similarly defined at about the same date as also established in Indiana). *See Schmidt v. Uhlenhopp*, 258 Iowa 771, 140 N.W.2d 118 (1966) and *Ferguson v. Pottawattamie County*, 224 Iowa 516, 278 N.W. 223 (1938).[17] In *McNabb*, 315 N.W.2d 9, Justice Uhlenhopp, whose relationship to the *Schmidt* case is unrevealed, dissented in unsuccessfully contending that the burden should be upon the lawyers pro bono. Illinois has also followed a compensatory fee for comparable services in the area with a pro bono factor of a reasonable amount. *People v. Devin*, 123 Ill.2d 60, 121 Ill.Dec. 250, 525 N.E.2d 56 (1988) (fee increased by the Supreme Court to $60 an hour to total $3,500 as originally awarded in total amount of $1,500); *People v. Ashford*, 162 Ill.App.3d 212, 113 Ill.Dec. 202, 514 N.E.2d 1213 (1987); *In re Petition for Fees*, 148 Ill. App.3d 453, 102 Ill.Dec. 67, 499 N.E.2d 624 (1986); *People v. Gangestad*, 104 Ill.2d 190, 83 Ill.Dec. 566, 470 N.E.2d 986 (1984), fee in excess of statute granted and approved; *People v. Devin*, 93 Ill.2d 326, 67 Ill.Dec. 63, 444 N.E.2d 102 (1982); *People v. Johnson*, 87 Ill.2d 98, 57 Ill.Dec. 599, 429 N.E.2d 497 (1981). For an extraordinary circumstance invoking the court's inherent power to appoint counsel with necessarily included power to enter an order insuring that counsel does not suffer an intolerable sacrifice and burden for the indigent's rights to be protected, see *Randolph*, 219 N.E.2d 337.

A case frequently cited in consideration of payment of legal fees for services to the indigent is *State v. Rush*, 46 N.J. 399, 217 A.2d 441 (1966). An interesting thesis was developed by the court, although the major purpose in the opinion was to secure legislative action. *See State in Interest of Antini*, 251 A.2d 291. The court in *Rush* said that membership in the bar did not carry a duty of its members to indigent individuals but only to answer a responsibility to the court when called. If that concept is accepted, the question remains whether the judiciary and this court, as members of the

independent third branch of government, should impose the burden on the individual lawyers or require that society in general through the public treasury be responsible. Better answers are addressed in cases from Kentucky and New Hampshire. In *Bradshaw v. Ball*, 487 S.W.2d 294, 298 (Ky.1972) (emphasis in original, that court, in first recognizing its prior history of providing no compensation, stated:

> No other profession in recent years has been expected to bear such a burden for services to the indigent without compensation—not even reimbursement of necessary expenses was allowed. Therefore, we conclude as did the learned trial judge that the time has arrived to declare the burden of such service a substantial deprivation of property and constitutionally infirm.
>
> It is in the public interest that the administration of criminal justice proceed fairly, impartially, expeditiously and efficiently. Therefore, it appears elemental that the public interest in the enforcement of the criminal laws and the constitutional rights of the indigent defendant to counsel can be satisfied only by requiring the state to furnish the indigent a competent attorney whose service does not unconstitutionally deprive *him* of *his* property without just compensation.

And then further recognition from No. 79 of The Federalist Papers (Rossiter edition, 1961) of the separation of power, the court then was persuaded:

> [T]hat it is the duty of the executive department to enforce the criminal laws, and it is the duty of the legislative department to appropriate sufficient funds to enforce the laws which they have enacted. The proper duty of the judiciary, in the constitutionally ideal sense, is neither to enforce laws nor appropriate money. The judiciary's reason for existence is to *adjudicate*.

*Id.* at 299 (emphasis in original). The answer then provided, which was obviously for interim purposes, was that "[a]ttorneys

---

17. One of the most poignant and yet pointed discussions of legal fees for criminal representation is found in *State v. Ryan*, 233 Neb. 151, 444 N.W.2d 656, 658, 661 (1989) with the increase from $8,776 to $33,000.

of this Commonwealth will no longer be required to accept court appointments to represent indigent criminal defendants, nor will they be subject to sanction if they decline such appointments." *Id.* at 300. See likewise *Green,* 470 S.W.2d 571, but compare *State ex rel. Wolff v. Ruddy,* 617 S.W.2d 64 (Mo.1981), *cert. denied* 454 U.S. 1142, 102 S.Ct. 1000, 71 L.Ed.2d 293 (1982) and *Roper,* 688 S.W.2d 757.

The New Hampshire Supreme Court in *Smith v. State of New Hampshire,* 118 N.H. 764, 394 A.2d 834 (1978), took a more effective posture by determining that the legal profession was to be relieved of the burden of uncompensated services which should pass to the citizens of the state. Reasonable compensation was considered and determined to be a matter of *judicial concern alone.*

> Since the obligation to represent indigent defendants is an obligation springing from judicial authority, so too is the determination of reasonable compensation for court-appointed attorneys a matter for judicial determination. The power to regulate officers of the court is a power inherent in the judicial branch. Implicit in that power is the authority to fix reasonable compensation rates for court-appointed attorneys.

*Id.* 394 A.2d at 839.

The court further stated:

> Without proper court control of court-appointed counsel, and indeed without adequate compensation for those attorneys, it might be impossible to obtain valid criminal convictions in future prosecutions of indigent defendants. In addition, if public funding is not forthcoming, the ethical duties of the bar to represent indigent defendants may have to be reevaluated by this court. In the future, adequate appropriations will have to be made in order to comply with this ruling and to ensure the continued functioning of the criminal justice system. The legislature is, of course, free to adopt an alternative method for funding the defense of indigent defendants. The courts, however, must determine the rea-

sonable compensation for court-appointed attorneys.

*Id.* at 839. The Missouri court in *Green,* 470 S.W.2d 571 took a similar perspective posture as adopted in *Rush* and *Smith. See also Ruddy,* 617 S.W.2d 64. See likewise *State v. Robinson,* 123 N.H. 665, 465 A.2d 1214 (1983), which addressed a maximum fee cap of $500 for misdemeanors and denied costs.

In an even more recent decision, West Virginia in *Jewell v. Maynard,* 383 S.E.2d 536 (W.Va.1989) declared a compensatory flat fee arrangement and capped maximum procedure unconstitutional. Existing systems for providing counsel to indigents at state expense was unconstitutional because rates of pay for indigents were so low and the volume of appointed cases so burdensome that the system took lawyer's property without just compensation. The court then held that no lawyer could be involuntarily appointed to a case unless the hourly rate of pay was at least $45 for out-of-court work and $65 per hour for in-court work. "Although this floor may, at first, appear arbitrary, * * * these rates are the minimum compensation constitutionally permissible * * *." *Id.* at 547. The current $20 per hour rate was consequently changed to the $65 per hour in court and $45 for office time. The court included a thoughtful comment which equally applies to the quality of representation which can be expected if adequate compensation is not provided in worker's compensation cases and particularly so because of the Wyoming civil and criminal statute confining any separate contingent fee agreement between the injured worker and his attorney.

Perhaps the most serious defect of the present system is that the low hourly fee may prompt an appointed lawyer to advice a client to plead guilty, although the same lawyer would advise a paying client in a similar case to demand a jury trial. Although the master did not have reliable evidence concerning this problem in West Virginia, he cited one study showing that 75 percent of defendants with court-appointed counsel plead guilty, while only 20 percent of defendants with retained counsel plead guilty. R. Hunt-

er, "Slave Labor in the Courts—A Suggested Solution," 74 *Case & Com.* No. 4 at 3 (1969).

\* \* \* \* \* \*

All of this becomes painfully obvious when we analyze the grossly unfair distribution of the indigent defense burden. The master found that in one county, one lawyer handles over 50 percent of the total appointed caseload. In some instances, lawyers who are in solo practice have had two-thirds of their entire caseloads allocated *involuntarily* to appointed cases. Of the lawyers who responded to the appointed counsel survey, some reported spending an average of 18.62 percent of their office time providing indigent representation.

\* \* \* \* \* \*

The fleeing of lawyers from appointed work is now placing an unconscionable burden on the 24 percent of the bar who still accept appointments.

*Id.* at 540–41 (emphasis in original).[18] Gilbert and Gorenfeld, *The Constitution Should Protect Everyone—Even Lawyers,* 12 Pepperdine L.Rev. 75, 82–83 (1984) (citing *Fresno County v. Superior Court of Fresno County,* 82 Cal.App.3d 191, 146 Cal.Rptr. 880 (1978) and footnotes omitted) states:

The myth that the court has the power to compel an attorney to provide free legal services was laid to rest in the state of Indiana some 130 years ago in the frequently cited case of *Webb v. Baird.* The Indiana Supreme Court rejected the contention that the bar, being granted special privileges, was under a *noblesse oblige* to provide uncompensated services.

The idea of one calling enjoying peculiar privileges, and therefore being more honorable than any other, is not congenial to our institutions. And that any class should be paid for their particular services in empty honors, is an obsolete idea, belonging to another age and to a state of society hostile to liberty and equal rights.

\* \* \* \* \* \*

Today's attorney occupies an even less privileged position than in the past, and thus should not be forced to dispense his services gratuitously. The cost of contributing free legal services may be prohibitive. Recent years have witnessed the removal of a number of obstacles designed by the legal profession to prevent competition.

Although the special preserves of the legal profession have been reduced in recent years, the cost of running a law office has increased. \* \* \*

\* \* \* \* \* \*

To make a decent living today, the attorney has to handle a tremendous number

---

**18.** An interesting but obviously unworkable adaptation was developed by one appellate court which extended the benefits and burdens of providing free legal services from the private practicing attorney *to all attorneys including those engaged in employment by the public instrumentalities of the state. Ruddy,* 617 S.W.2d 64. See the earlier Missouri case, *Green,* 470 S.W.2d 571, while more recently, the court found Missouri lawyers for civil cases had no enforceable duty to provide uncompensated services in civil litigation to represent indigents. *Roper,* 688 S.W.2d 757.

A converse application has developed which at least has been applied to non-criminal indigent representation. That principle is that if fair compensation is not available to the attorney, then the compulsive appointment cannot be made by the judiciary. Legal representation becomes dependent upon societal payment responsibility. "[U]ncompensated counsel is afforded to indigent matrimonial litigants as a matter of public policy, which policy gives way to the superior constitutional rights of the attorney to demand compensation as a condition for the representation." *Menin,* 359 N.Y.S.2d at 730. *See also Cudd v. Bass,* 771 S.W.2d 3 (Tex. App.1989).

The indigent is entitled to *adequate assistance of counsel* and the counsel should be no more obligated to contribute his professional work to the performance of public service than would be the call for other professions to likewise contribute, including doctors, dentists, architects and engineers; or hearing examiners and judges. More specifically within the profession, it means that a small segment of the legal profession, namely the practicing trial lawyer who practices in the specialties, including criminal defense and worker's compensation, cannot be separately burdened where an equivalent responsibility is not impressed upon the governmental employee, the salaried attorney and the office practitioner.

of cases * * *. "Furthermore, expanding concepts in law have increased the volume of assignments, the complexity of the issues involved, and a mushrooming of the duties involved in an appointed case."

See also, Comment, *The Uncompensated Appointed Counsel System: A Constitutional and Social Transgression*, 60 Ky. L.J. 710 (1972) and Note, *The Indigent's "Right" to Counsel in Civil Case*, 43 Fordham L.Rev. 989 (1975).

An interesting statement is found in Comment, *supra*, 60 Ky.L.J. at 715:

> Just as it would seem that the services of a doctor, a plumber, or a barber are his "property" within the constitutional sense of the word, it should logically follow that the services of a lawyer constitute his "property." For just as a grocer, a clothing store owner, and an automobile dealer sell their goods, a doctor, a plumber, a barber, and a lawyer sell their services. It would be interesting to observe the uproar if an automobile dealer were required to give free cars to indigents or a barber were required to give free haircuts.

Whatever remnants remain in criminal law within the postulation of the *Dillon*, 346 F.2d 633 [19] concept, a lawyer's obligation to provide free legal service to non-criminal cases finds no present fertility in today's environment. *Roper*, 688 S.W.2d 757; *Matter of Clark*, 216 N.J.Super. 497, 524 A.2d 448 (1987); *Menin*, 359 N.Y.S.2d 721. The due process right for representation did not justify a different result from the Sixth Amendment requirement in the criminal cases. "[C]ounsel is required in each case because fundamental constitutional interests are at stake." *Scruggs*,

545 So.2d at 912. "[T]he maximum fee limit established [by statute] is a constitutionally impermissible legislative encroachment upon the judiciary's power of 'ensuring adequate representation by competent counsel.'" *Id.* at 912 (quoting *Makemson*, 491 So.2d at 1113). *See Cunningham v. Superior Court (Ventura County)*, 177 Cal.App.3d 336, 222 Cal.Rptr. 854 (1986); *Luke*, 74 Cal.Rptr. 771, narcotic commitment; and *Bedford*, 447 P.2d 193, involuntary hospitalization. *See also* Note, *Court Appointment of Attorneys in Civil Cases: The Constitutionality of Uncompensated Legal Assistance*, 81 Colum.L.Rev. 366 (1981). In confining this decision to the special civil case where constitutionally guaranteed rights to assistance of counsel does exist, lawyers equally with doctors under the Wyoming Constitution cannot involuntarily be required to provide sustenance of career and ability of a lifetime's work on a donated basis. This decision is based on an independent application of the Wyoming state statutes and constitution and reference to federal precedent is not controlling and provides only relevant authority by factual comparison.[20]

This court should not interpret the Wyoming statute to require an unconstitutional result by a finding that the attorney *may* either not be paid at all or *may* be paid an unreasonable fee. Until W.S. 27–14–608 is repealed with whatever results that might provide, e.g., uncontrolled contingent fees, etc., we would apply a construction to W.S. 27–14–602(d) requiring both availability of counsel and reasonable compensation to the provider of the legal services in equivalency to compensation for services provided by the health care industry.

---

**19.** Even by application of *Dillon*, the contributory responsibility of the practicing attorney cannot be extended to cost advanced for trial purposes. *Williamson v. Vardeman*, 674 F.2d 1211 (8th Cir.1982); *Ruddy*, 617 S.W.2d 64; *Robinson*, 465 A.2d 1214; *Second Judicial Dist. Court In and For Washoe County*, 453 P.2d 421.

**20.** Since the obligation to make counsel available to the indigent has a constitutional base, representation must be full and complete. *State in Interest of Antini*, 251 A.2d 291. The subject was phrased differently in the worker's compen-

sation case of *Mitchell v. Goodyear Service Store*, 63 Md.App. 426, 492 A.2d 984, 988, *cert. granted* 304 Md. 362, 499 A.2d 191 (1985), *aff'd* 306 Md. 27, 506 A.2d 1178 (1986), "the Commission may not set fees so cheeseparingly as to deprive claimants of the practical ability to obtain competent counsel." *See also Cline*, 126 P.2d at 1030, "[t]o arbitrarily deny a claimant the right of competent legal representation, by fixing unreasonably low remuneration * * * may amount to a denial of due process".

## F. DETERMINATION OF REASONABLE COMPENSATION

"Reasonable compensation" within the discretionary structure provided to the hearing examiner by statute requires analysis. *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). The exhaustive precedent reveals two separate concerns in providing the right to the worker and the protection to the payment obligor being either the state fund in general or the employer's account as a specified source. First is a requirement of a standard to determine the reasonable fee and second, a process for submission and resolution of any conflicts that develop. In this case, it is the process that has been raised primarily on appeal more directly than the standard for amount. We address these considerations in order.

It is apparent that at least for worker's compensation cases, an acceptable standard is not provided by scheduled amount which is non-compensatory to the attorney and eliminates most, if not all, of the practicing bar from participation. Berger, *Court Awarded Attorneys' Fees: What is "Reasonable"?*, 126 U.Pa.L.Rev. 281 (1977). A reasonable fee has to be based on comparable services and the billing practice of the individual attorney directly related to the lodestar time requirement. *D.C. Circuit Review September 1987–August 1988*, 57 Geo.Wash.L.Rev. 1063, 1122 (1989). The State of Wyoming has an identical interest in fair compensation to be provided to Phifer as was (and as is being done) for the tremendously expensive water litigation addressing specifically the Big Horn water cases, *In re General Adjudication of All Rights to Use Water in the Big Horn River System*, 753 P.2d 76 (Wyo.1988), *cert. granted* 488 U.S. 1040, 109 S.Ct. 863, 102 L.Ed.2d 987, *judgment aff'd* 492 U.S. 406, 109 S.Ct. 2994, 106 L.Ed.2d 342, *reh'g denied* —— U.S. ——, 110 S.Ct. 28, 106 L.Ed.2d 639 (1989), where fees in that one case undoubtedly exceed everything ever paid to all attorneys in the history of the Wyoming Worker's Compensation Act. Additionally, Phifer resides in Wyoming and contributes to our infrastructure and society. Injured workers are not second-class citizens and the worker's compensation system cannot be second hand in responsiveness to their rights within the justice delivery system.

We should not ignore a fair fee reasonableness factor when payment is not contingent and receipt not delayed. The analysis has to be based upon business decisions without applying some concept of significant donation by the attorney.[21] For present purposes in evaluating the statutory system providing a fixed-fee, time-based arrangement for a reasonable compensation, the allowance of legal service compensation within W.S. 27–14–602(d) should be based on existent national and state case law and clear precedent of this court. The standard for determination starts with lodestar and accepts further adjustment within concepts directly related to reasonableness under the circumstances presented. *UNC Teton Exploration Drilling, Inc. v. Peyton*, 774 P.2d 584 (Wyo.

---

**21.** Obviously, the legislature could structure a different system patterned after some jurisdictions where the fee payment is essentially contingent on success and the allowable percentage ranges are from around twenty percent to uncontrolled bargained levels. An adequate contingent fee arrangement would undoubtedly expand practitioner availability and interest comprehensively and increase the amount of the fees when recovery is secured. *See Wattenbarger*, 717 P.2d 1175, but see *Manzanares v. Lerner's, Inc.*, 102 N.M. 391, 696 P.2d 479 (1985), where a percentage factor provided an inadequate fee. *Gullett*, 722 P.2d 619; *Wight*, 664 P.2d 303; *Woodson v. Phillips Petroleum Co.*, 102 N.M. 333, 695 P.2d 483 (1985). The general practice in Missouri is to set a fee not to exceed twenty-five percent of the award. *Page*, 758 S.W.2d 173. Broad membership worker's compensation claimant bar associations are to be found in some jurisdictions with participants including some of the national premier trial attorneys. Adaptation of that approach rather than the time fee controlled private practitioner is clearly a legislative decision. Unfortunately, the hard decision that follows in that status is whether the predominating concept of worker's compensation is preserved of whole recovery to the claimant. *Clark*, 629 P.2d 657; *Wight*, 664 P.2d 303. This is the "who pays" decision—the worker, from entitlement to benefit including billings by medical care providers, or the employer's account, or finally the fund in general itself.

1989).[22] *See UNC Teton Exploration Drilling, Inc.,* 774 P.2d at 593–606 and *Bueno v. CF & I Steel Corp.,* 773 P.2d 937, 940–41 (Wyo.1989). In *UNC Teton Exploration Drilling, Inc.,* 774 P.2d at 594, we specifically adopted the lodestar concept discussed in *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) for application in a case of federal statutory entitlement. After excising the *Hensley* prerequisite of winning on the merits to receive reasonable fees, we continue to utilize the lodestar concept as the initial concept for determining attorney fees in worker's compensation contested cases. The lodestar standard is the product of "reasonable hours times a reasonable rate." *UNC Teton Exploration Drilling, Inc.,* 774 P.2d at 595. " ' "[R]easonable fees" under § 1988 are to be calculated according to the prevailing market rates in the relevant community.' " *In Re Olson,* 884 F.2d 1415, 1423 (D.C.Cir.1989) [23] (quoting *Blum,* 465 U.S. at 895, 104 S.Ct. at 1547). In *Blum,* 465 U.S. at 893–94, 104 S.Ct. at 1546, the United States Supreme Court indicated Congress intended fees should not produce windfalls for attorneys but be adequate enough to attract competent counsel.[24] See *D.C. Circuit Review, supra,* 57 Geo.Wash.L.Rev. at 1124–25. This court will not presume Wyoming's legislature intended, by W.S. 27–14–602(d),[25] for fees to be so low that no competent attorney could afford to accept an appointment to represent an injured hourly wage earner faced with a battle against the Attorney General's office and/or employer counsel. The inquiry does not end with lodestar which, when identified, can be enlarged or reduced by a variety of factors. *Johnson v. Georgia Highway Exp., Inc.,* 488 F.2d 714, 718–19 (5th Cir.1974) (emphasis in original) states: [26]

22. We are assisted by the very current income statistics for the Wyoming State Bar:

Hourly rates for legal services in Wyoming have increased somewhat in the past two years. In 1987, the average hourly charge was $77.40. This year, it is about $81.30. Nationwide, the average rates have also risen slightly. In 1987 the average rate was about $115. This year it is closer to $120.

Nationwide, the average attorney earns between $75,000 and $90,000, according to ABA *statistics.* Most likely, the average of Wyoming attorneys is something closer to the figures for surrounding states like Nebraska and Colorado. Those average between $30,000 and $40,000.

About 80 percent of Wyoming's lawyers work more than 40 hours per week. Economic models from the ABA and other state bars indicate that attorneys bill between one-third and two-thirds of the time they actually spend at work.

The average Wyoming attorney spends about 9 hours per month serving *pro bono* clients. Only about 20 percent of Wyoming attorneys do not accept *pro bono* cases, and these lawyers tend to be judges or government attorneys.

Wyoming Lawyer, *supra,* at 2.

23. A requested $1,259,072.69 fee was reduced on appeal to $861,589.28. Attorney's fees were billed between $75 and $225 per hour except for James F. Neal as independent consultant at $260 per hour. Law clerks and paralegals were billed at "market rates" as a community standard. *In Re Olson,* 884 F.2d at 1422, 1430.

24. Billed legal fees were requested on an hourly basis from $95 to $105 per hour. The principal issue was a bonus of an additional fifty percent as a complexity and novelty factor. That adjunct amount granted by the district court was reversed by the supreme court to leave the total amount awarded of $79,312 for 809 hours of legal service. See, however, Florida where a multiplier of 1 to 2.5 is used in contingent fee cases. *Quanstrom,* 555 So.2d 828.

In *Jardien v. Winston Network, Inc.,* 888 F.2d 1151, 1152 (7th Cir.1989), as a similar example in an aid discrimination in employment act claim, 29 U.S.C.A. §§ 621–634, damages of $39,673 were awarded and attorney's fees of $76,046, although the private fee agreement was not to exceed $5,000. The case was remanded for recomputation, but a time billing rate of market was considered appropriate between $100 to $160 per hour.

25. "Upon request, the hearing examiner may appoint an attorney to represent the employee or claimants and may allow the appointed attorney a reasonable fee for his services at the conclusion of the proceeding." W.S. 27–14–602(d).

26. An example, although a criminal case and more egregious in circumstance, was addressed by the Nebraska court in *Ryan,* 444 N.W.2d 656, where the trial court award was for defense of a double murder capital penalty case and the supreme court increased the awarded amount nearly fourfold to total $33,000. Abuse of discretion was addressed:

The trial court's finding that applicant is entitled to a total of $8,776 for time devoted to the appointed defense of Michael Ryan from Au-

(1) *The time and labor required.* * * *

(2) *The novelty and difficulty of the questions.* * * *

(3) *The skill requisite to perform the legal service properly.* * * *

(4) *The preclusion of other employment by the attorney due to acceptance of the case.* * * *

(5) *The customary fee.* * * *

(6) *Whether the fee is fixed or contingent.* * * *

\* \* \* \* \* \*

(7) *Time limitations imposed by the client or the circumstances.* * * *

(8) *The amount involved and the results obtained.* * * *

(9) *The experience, reputation, and ability of the attorneys.* * * *

(10) *The "undesirability" of the case.* * * *

(11) *The nature and length of the professional relationship with the client.* * * *

(12) *Awards in similar cases.*[27]

We are then guided by ample precedent as to the proper process to be followed by the hearing examiner in review of the submitted billing and the standard then applied by the court in further examination upon any appeal.

1. The hearing examiner shall set attorney's fees based on a determination of the reasonableness of the fee requested for the work product within contemporary standards in that community. *Gullett*, 722 P.2d 619; *In re Petition to Adopt Rule Regarding Atty's. Fees, Costs & Investigation Expenses of Private Attys. Appointed to Defend Indigent Defendants*, 634 P.2d 1185 (Mont.1981); *Smith*, 619 P.2d 1217; *McKenney*, 582 P.2d 573.[28]

2. If the amount is reduced from the claim made, the hearing examiner shall pro-

gust 23, 1985, to April 25, 1986, is not supported in any way by the undisputed evidence in the record. The order of the trial court as to the fees to be awarded applicant is an abuse of discretion and is hereby set aside and reversed.

\* \* \* \* \* \*

For this court to approve the amount awarded to applicant by the trial court would be to send a message that the sixth amendment to the U.S. Constitution and article I, § 11, of the Nebraska Constitution have no real meaning. This case was a disaster to many, aside from the two victims of Michael Ryan. Among those affected are the taxpayers of Richardson County and of the State. The fact remains, however, that the attorneys appointed to represent the defendants in this bestial event are not guilty of any crime. They are honorable professional people and have been appointed by a court to perform a duty required by the Constitution. It is not appropriate to subject attorneys, appointed or otherwise, to the treatment seen in the fee hearing in this case.

*Id.* at 660–61. See likewise *Jewell*, 383 S.E.2d 536.

27. This record, other litigation involving attorney fees addressed on appeal, current literature, national case law and common knowledge uniformly show that a fee schedule of $50 court time and $25 office time is not reasonable. That level of compensation would, in many cases, be below office cost for maintenance of the practice in the modern law firms for experienced and competent trial lawyers.

28. A five factor computation process is identified in *Ganson v. State, Dept. of Admin., Office of State Employees' Ins.*, 554 So.2d 522, 525–28 (Fla.App.1989) (emphasis in original):

1. *The number of hours reasonably expended on the litigation.*

\* \* \* \* \* \*

2. *The reasonable hourly rate for the services of Ganson's attorney.*

\* \* \* \* \* \*

3. *The calculation of the lodestar amount.*

\* \* \* \* \* \*

4. *Effect of "results obtained" on the lodestar amount.* * * *

\* \* \* \* \* \*

5. *Application of the "contingency risk" factor to the lodestar amount.* [This may or may not properly apply in Wyoming dependent on whether the agency or the legislature wants to create a contingency payment system.]

*Cf. What An Idea, Inc. v. Sitko*, 505 So.2d 497 (Fla.App.1987), which did not follow lodestar and with a computed benefit recovery of $17.6 million. The legal fee awarded was $1.75 million at an hourly rate equivalency of $4,000 per hour as a straight contingency fee application. *What An Idea, Inc.*, 505 So.2d at 504. Conversely, in *Greene v. Secretary of Dept. of Health and Human Services*, 19 Cl.Ct. 57, 66 (1989), lodestar was applied and requested fee hourly rate of $300 to $500 per hour was reduced to $175 per hour for the attorney, $50 for law clerks and $30 for law assistants.

vide the appointed counsel an explanation for the reduction. *Lueck,* 669 P.2d 719; *McKenney,* 582 P.2d 573; 3 A. Larson, Workmen's Compensation Law § 83.13(b) at 15–1305 (1989).

3. In the event of a reduction by the hearing examiner, appointed counsel may petition for reconsideration and submit additional documentation and explanation.[29] *McDanold v. B.N. Transport, Inc.,* 216 Mont. 447, 701 P.2d 1001 (1985); *State v. Longjaw,* 307 Or. 47, 761 P.2d 1331 (1988).

4. Based on the detail and documentation furnished and any countervailing evidence or information made part of the record, the final determination of the hearing examiner shall be entered. *Longjaw,* 761 P.2d 1331.

5. Judicial review shall first consider whether the test used for determination of the reasonableness of the fee is valid as a matter of law. If the standard for determination of reasonableness is legally proper, the test of applied decision is a matter of discretion to be considered within the standards of review whether substantial evidence in support of the decision is afforded pursuant to W.S. 16–3–114(c). *See Bell v. United Princeton Properties, Inc.,* 884 F.2d 713 (3rd Cir.1989) [30] and *Woodson v. Phillips Petroleum Co.,* 102 N.M. 333, 695 P.2d 483 (1985). *See also Gullett,* 722 P.2d 619, where in Montana, a going rate standard was applied of $125 per hour for legal services and $35 for paralegal services, which totalled $17,959 in fees. A record adequately documented, detailed and defined in decision findings should deter the undesired "second trial" fee litigation.[31]

## G. CONCLUSION

Fundamental issues of the right of citizens to have effective assistance of counsel and the right of attorneys to receive reasonable compensation was presented by this worker's compensation appeal. For all of the foregoing reasons, the action of the district court in rejecting the reduction in legal fees and denial of costs incurred by the attorney for James L. Brown, was legally justified.

---

29. The adequacy of initially itemized statements and sufficiency of supporting proof upon a hearing should not be disregarded. *Woodson,* 695 P.2d 483. *See Blanchard v. Bergeron,* 893 F.2d 87 (5th Cir.1990) after remand and rehearing from *Blanchard v. Bergeron,* 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989).

30. *Bell* was an ERISA (Employee Retirement Income Security Act) case, 29 U.S.C.A. §§ 1001–1461, where plaintiff received in settlement a pension payment of $33,721 and general damages of $8,139.50. The attorney asked for $74,804.51 attorney's fees (lawyers $150 and $125, law clerk $25 per hour) plus an enhancement factor. *Bell,* 884 F.2d at 716. The magistrate recommended $66,634.01 which the district court reduced to $43,423. Plaintiff's attorney appealed the reduced amount. The appellate court remanded for recomputation. See similarly a prison condition suit against the State of New Mexico where the award of fees and costs was $77,611.38 for October 1985 to June 30, 1986 and $325,091.97 for July 1986 to June 1987. *Duran v. Carruthers,* 885 F.2d 1492 (10th Cir.1989). The amount is nearly as much as was awarded to all Wyoming attorneys in all cases for all attorney's fees for worker's compensation representation, including appeals in fiscal year 1989 (something less than $400,000, non-appealed disposition and about $200,000 appealed cases). Fees provided for worker's compensation representation is a small part of Wyoming governmental legal service cost.

31. Texts, review articles and the many cases identify a number of systems for attorney fee compensation in worker's compensation cases. In range, the progression is from uncontrolled contracting between attorney and worker, supervision by the agency or court as to a level of reasonableness, whether contingent or guaranteed, although frequently contingent in the range of a typical one-third fee, supervision of amount paid by the worker on a result obtained basis, legal services provided by the state in some fashion, and fee payment by the agency on a reasonable basis. The system now established for this state provides that fees are paid from state fund resources with any private agreement constrained by civil and criminal impedances. In application of the Wyoming system, the discretion for determination of the amount of legal fees for representing worker's compensation claimant, *Soldat v. Iowa Dist. Court for Emmet County,* 283 N.W.2d 497 (Iowa 1979), should not be extended to set amounts which provide no actual compensation, and when considered in conjunction with office overhead, factually take a property interest of the attorney, his time, as a contribution used to defray an obligation of the state and society. *Tappe,* 326 N.W.2d 892; *Johnson,* 272 N.W.2d 97. *Reasonableness means fair compensation.*

[I]t too often is overlooked that the lawyer and the law office are indispensable parts of our administration of justice. Law-abiding people can go nowhere else to learn the ever changing and constantly multiplying rules by which they must behave and to obtain redress for their wrongs. The welfare and tone of the legal profession is therefore of prime consequence to society, * * *.

*Hickman v. Taylor*, 329 U.S. 495, 514–15, 67 S.Ct. 385, 395, 91 L.Ed. 451 (1947), Jackson, J., concurring.

THOMAS, Justice, specially concurring, with whom CARDINE, Justice, joins.

I cannot join in the opinion of the court in this instance. The only issues presented by the parties relate to the judicial power of the district court to review, pursuant to the Wyoming Administrative Procedure Act, an award of attorney fees allowed by the administrative hearing examiner pursuant to the Wyoming Workers' Compensation Act. After that jurisdictional question is resolved, the only remaining question is whether the district court properly ordered the payment of fees as billed by counsel. That billing did not implicate the $50 per hour ceiling established by the agency rules, but it did exceed the $1,000 limitation invoked by the hearing examiner.

The majority opinion in this instance obviously is intended as only a foreword or prelude to the concurring opinion presented by Chief Justice Urbigkit. Its primary function is to expand the scope of this case in order to permit the utterance of a polemic regarding adequate compensation for attorneys. The majority opinion says:

"We address these issues within the substantive context presented of the injured worker's right to competent counsel and the counsel's right to reasonably adequate compensation for his services." At 838.

This case presents no issue of the right of an injured workman to competent counsel, and the fact is that Brown had very effective counsel.

The operative facts in this case are essentially included in footnote one of the majority opinion although even that footnote extends beyond the material facts. It is clear that the hearing examiner, by adding, as gloss to the agency rule, the requirement of approval in advance if the $1,000 ceiling were to be exceeded, engaged in action that was arbitrary and capricious, and his ruling was reviewable under the Wyoming Administrative Procedure Act. While it perhaps would have been appropriate to return the case to the hearing examiner with direction to reassess the reasonableness of the fee, I have no difficulty in sustaining the order of the district court under the circumstances. The exclusive thrust of the agency position is that the rule was applied properly, and no attack is made upon the number of hours included in the charges reflected in the billing statement. The judgment of the district court should be affirmed.

Contrary to the suggestion in the majority opinion and the position taken in Chief Justice Urbigkit's concurring opinion, the case does not raise the adequacy of the $50 per hour ceiling articulated in the agency rules. Counsel did not even ask for more than that amount in submitting the billing statement. Consequently, whatever the proper amount might be for hourly billing for such matters, that issue is not before the court in this case. In fact, it is difficult to understand how that issue could ever be raised by an attorney who accepted an appointment knowing in advance that the amount of fees would be limited to $50 an hour.

If Wyoming lawyers should choose not to accept such appointments, then some of the interesting questions raised in the majority opinion might well emerge. If a challenge were mounted to the rule itself, again, some of the interesting questions raised in the majority opinion might be present. The role of this court, however, is to address errors of law present in a case before the court. We have no justification for creating, or inventing, issues so that we may resolve them in an advisory opinion.

Perhaps the best evidence of the skewed approach in this instance is the fact that counsel for the appellee somehow becomes the appellee presenting the issues on ap-

peal. I find no evidence in the record that counsel is a party, and she should not be alluded to as such. I have difficulty conceptualizing counsel becoming a party to the client's action without automatically structuring a conflict of interest.

The utilization of judicial opinions to serve as a platform for philosophical dialogue by judges or justices is a dangerous practice. It does little to serve the law and invites justified criticism. I certainly concur in the result, but I write separately to articulate my objection to the way in which the majority opinion has been used to serve as a platform for the concurring opinion of the Chief Justice.

I add, almost as an afterthought, that it does seem to me that the thrust of the majority opinion is not only to legislate, in violation of the separation of powers doctrine found in Wyo. Const. art. 2, § 1, but there is also a manifest invasion of the authority of the executive branch of government. Appropriate exercise of judicial restraint does not support or justify this opinion. Instead, the effort should be foreclosed by applicable and appropriate constitutional constraints.