**COMMONWEALTH of Kentucky, TRANSPORTATION CABINET, Appellant,**

**v.**

**William WEINBERG, Appellee.**

No. 2003–CA–001464–MR.

Court of Appeals of Kentucky.

Oct. 29, 2004.

W. David Shearer, Jr., Christopher G. Newell, John W. Harrison, Jr., Louisville, KY, for appellant.

Daniel F. Dotson Whitesburg, KY, for appellee.

Bill Weinberg, Hindman, KY, pro se,

Before JOHNSON and TAYLOR, Judges; EMBERTON, Senior Judge.[1]

*OPINION*

TAYLOR, Judge.

The Commonwealth of Kentucky, Transportation Cabinet (the Cabinet) brings this appeal from a February 27, 2002, judgment of the Knott Circuit Court. We affirm in part and reverse in part.

On September 15, 1993, William Weinberg was cited for speeding 16–25 mph over the speed limit in Fayette County, Kentucky, and was convicted of the violation in the Fayette District Court on October 5, 1993. On March 22, 1994, Weinberg was again cited for speeding 16–25 mph over the speed limit in Fayette County and was convicted of the violation in the Fayette District Court on March 31, 1994. Consequently, Weinberg was assessed six points per speeding violation and, thus, accumulated twelve points in a two-year period.

Under 601 Ky. Admin. Regs. (KAR) 13:025 (the point system),[2] the accumulation of twelve or more points within a period of two years constituted cause for suspension of an individual's driving privilege. The Cabinet sent Weinberg notice that he had accumulated twelve points within two years and notice of a show cause hearing as to why his driving privilege should not be suspended. *See* 601 KAR 13:025 § 12. At the hearing, Weinberg put on evidence, and the Cabinet elected to offer no evidence other than the two traffic convictions. Eventually, Weinberg was found to have accumulated twelve points in a two-year period and, thus, to be an habitually reckless or negligent driver. *See* Kentucky Revised Statutes (KRS) 186.570(1)(d). Weinberg was offered probation in lieu of suspension, but he refused. Thereupon, Weinberg's driving privilege was suspended for a period of six months.

Weinberg filed a written "grievance" with the Cabinet and also filed a complaint in the Knott Circuit Court on May 26, 1994. *See* 601 KAR 13:025 § 12. In the complaint, Weinberg claimed he was denied a due process hearing by the Cabinet; 601 KAR 13:025 was arbitrary and capricious because it failed to use accident-cause statistics in assessing points for traffic violations; and the regulation was unconstitutional. On February 27, 2002, the circuit court entered judgment in favor of Weinberg. Therein, the court concluded

---

1. Senior Judge Thomas D. Emberton sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes 21.580.

2. We refer to 601 Ky. Admin. Regs. (KAR) 13:025 as it existed at the time of Weinberg's traffic violations in 1993 and 1994. This version of 601 KAR 13:025 was adopted on August 9, 1990. 601 KAR 13:025 was later amended effective February 10, 1997, which is the version currently in effect.

601 KAR 13:025 amounted to an arbitrary exercise of power because the point system failed to rely upon accident-cause statistics as mandated by the regulation. This appeal follows.

■ Our review of an administrative agency's decision focuses upon arbitrariness. *American Beauty Homes Corp. v. Louisville and Jefferson County Planning and Zoning Comm'n*, Ky.App., 379 S.W.2d 450 (1964). Arbitrariness has many facets; most notable are whether the agency acted in excess of granted powers, whether procedural due process was afforded the parties, and whether the administrative agency's decision was supported by substantial evidence. Although never specifically articulated by a Court of this Commonwealth, it is axiomatic that failure of an administrative agency to follow its own rule or regulation generally is *per se* arbitrary and capricious. *See State ex rel. Wyoming Workers' Compensation Div. v. Brown*, 805 P.2d 830 (1991); 2 Am.Jur.2d *Administrative Law* § 499 (2004). With the forgoing legal authority in mind, we shall undertake an analysis of 601 KAR 13:025.[3]

■ The Cabinet derived its specific authority to promulgate 601 KAR 13:025 from KRS 186.400 and KRS 186.570. KRS 186.400 specifically grants the Cabinet the authority to promulgate regulations to carry out the directives of KRS 186.570. KRS 186.570(1)(d) provides, in part, that the Cabinet may suspend an operator's license if the Cabinet has reason to suspect that a "person is an habitually reckless or negligent driver of a motor vehicle or has committed a serious violation of the motor vehicle laws."

In an effort to fulfill the directives of KRS 186.570(1)(d), the Cabinet promulgated 601 KAR 13:025 (the point system), which provides in part:

*This regulation specifies the driver licensing point system in which traffic offense convictions are assigned a certain number of points, according to the seriousness of the offense as determined by either accident-cause statistics or by statute.* Certain offenses have proven so dangerous that they are made cause for suspension periods rather than point accumulation. The purpose of the point system is to establish a criterion whereby the discretion allowed the Transportation Cabinet in determining the "habitually reckless or negligent driver" or the "serious violator" is not exercised arbitrarily and capriciously, but each license holder will be treated like every other one, and each will know or can determine his point status at any given time. (emphasis added).

From the above regulatory language, it is clear that 601 KAR 13:025 mandated the creation of a point system whereby a specific traffic offense would be assigned a certain number of points based upon the seriousness of that offense as determined by accident-cause statistics. Stated differently, accident-cause statistics were to be utilized to assign the number of points to a particular traffic offense. Presumably, if a specific traffic offense had a higher percentage of accidents attributed to it, the offense would be assigned a higher number of points. In contrast, if a traffic offense is associated with a lower number of accidents, the offense would be assigned a lower number of points. Under 601 KAR 13:025, an operator's driving privilege may be suspended if he accumulates twelve points in a two-year period or if he

---

**3.** Our analysis is solely confined to the version of 601 KAR 13:025 that was adopted on August 9, 1990, and was the version in effect at the time of Weinberg's traffic violations.

is convicted of certain "serious violations of the motor vehicle laws."[4]

As 601 KAR 13:025 specifically mandated the use of accident-cause statistics, it was incumbent upon the Cabinet to have followed such mandate in creating the point system. Upon review of the record as a whole, the evidence overwhelmingly demonstrates the Cabinet did not utilize accident-cause statistics in creating the point system under 601 KAR 13:025.

In its judgment, the circuit court specifically outlined the abundant evidence demonstrating the Cabinet's failure to utilize accident-cause statistics:

8. The Cabinet has failed in its burden to show that the point system in effect at the time involved herein was reasonable, was not arbitrary and capricious and was based on accident-cause statistics, as required by 601 KAR 13:025. Sandra Garman Pullen Davis, a staff assistant for the Secretary of Transportation, testified that she was the author of all of the regulations pertaining to the point system from 1984 up until the date of her deposition, including 601 KAR 13:025. She further testified that none of the changes in the point system which she made were based upon any research relating to accident-cause statistics and that she had been provided with no information concerning accident-cause statistics to assist her in her preparation of the regulations. Mr. Steve Coffey, Assistant Director of the Division of Driver's Licensing, testified that he was aware of no research since 1984 that had been done with regard to the point system, although he was aware of an earlier study by Ken Agent. Mr. Coffey testi-

fied that Mr. Agent's recommendations were not implemented. Coffey further testified that he had no personal knowledge of any accident-cause statistics in the Department and that no research had been done pertaining to accident-cause statistics in the five (5) years preceding this action. The Defendant's own expert, Ken Agent, testified that from 1979 until the time of his deposition he was aware of no one who had done any work on accident-cause statistics relating to the point system.

9. Plaintiff's expert Dr. James McKnight, founder and President of the National Public Services Research Institute and a person who has done numerous studies for the National Highway Traffic Safety Administration, testified that there was no empirical evidence to support Kentucky's point system as being based on accident-cause statistics. In short, the overwhelming evidence of record allows for no other conclusion but that the Defendant did not follow its own regulations in failing to base its point system on accident-cause statistics.

We must conclude, as did the circuit court, the evidence overwhelmingly establishes the Cabinet failed to follow 601 KAR 13:025 by not utilizing accident-cause statistics in creating the point system. As the Cabinet failed to follow its own regulation, we are of the opinion the Cabinet acted arbitrarily and capriciously in creating the point system contained in 601 KAR 13:025. We, thus, hold 601 KAR 13:025 to be invalid. Our opinion, however, is narrowly limited to invalidating that version of 601 KAR 13:025 adopted on August 9, 1990, and in effect until February 9, 1997.[5]

---

4. Under 601 KAR 13:025, serious violations include racing, speeding 26 mph or more over the speed limit, and attempting to elude law enforcement by use of a motor vehicle.

5. We do not pass upon the validity of the current version of 601 KAR 13:025 as amended effective February 10, 1997. The 1997 amendment deleted the mandate that the

█ We make one last observation. In its judgment, the circuit court specifically directed:

2. The Defendant is instructed to revamp its point system, 601 KAR 13:025, to place it in compliance with its regulation which requires that the points be based upon either accident-cause statistics or statute. In the absence of statutory changes, the Cabinet is instructed to retain nationally recognized experts to examine the Kentucky point system from the standpoint of national accident-cause statistics and Kentucky accident-cause statistics and to implement at the earliest feasible date, a new point system based upon valid and reliable accident-cause statistics;

3. In the meantime, the Court finds that the hearing afforded the Plaintiff and others like him violate the Kentucky and the United States due process requirements under both Constitution[s] and the Court orders the Cabinet to treat the presumption created by the satisfaction of the requisite number of points under the Kentucky point system as a rebuttable presumption, rather than an irrebuttable presumption, until such time as the Cabinet has demonstrated to the Court that Kentucky's point system is reasonably related to valid, reliable, and current accident-cause statistics.

The circuit court required the Cabinet to "revamp" 601 KAR 13:025 by utilizing accident-cause statistics and to implement a rebuttable presumption at its hearings. Effective February 10, 1997, 601 KAR 13:025 was amended, and the mandate that the point system be based upon accident-cause statistics was deleted therefrom.[6]

In view of such substantive amendment, the circuit court's directive that the Cabinet revamp 601 KAR 13:025 utilizing accident-cause statistics is now moot.

█ As to the circuit court's implementation of the rebuttable presumption, we conclude this was error. Because 601 KAR 13:025, as adopted on August 9, 1990, has been invalidated, there existed no lawful point system in Kentucky from August 9, 1990, to February 9, 1997. Since no legitimate point system existed, there, likewise, existed no need or requirement for a hearing upon accumulation of points under the invalid point system. Therefore, the implementation of a rebuttable presumption is erroneous.

In sum, we hold 601 KAR 13:025, as adopted August 9, 1990, to be invalid and affirm the circuit court's decision upon this issue. We, however, reverse the part of the circuit court's decision that directed the Cabinet to "revamp" 601 KAR 13:025 and to implement a rebuttable presumption.

For the foregoing reasons, the judgment of the Knott Circuit Court is affirmed in part and reversed in part.

ALL CONCUR.

█

point system be based upon accident-cause statistics.

6. 601 KAR 13:025 currently states that it is necessary to establish an equitable driver's license point system to punish a driver who violates traffic laws. The points are then utilized to determine if a person is an "habitually reckless or negligent driver" for which penalties may be imposed upon his driving privilege.